# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No.08-27561-SBB |
| ACCENT WINDOWS, INC. | ) | |
| EIN: 84-1610404 | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |

## NOTICE OF FILING OF AMENDED DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED JULY 17, 2009

The Debtor, by and through its attorneys, Kutner Miller Brinen, P.C., herewith files its Amended Disclosure Statement to Accompany Third Amended Plan of Reorganization dated July 16, 2009, a copy of which is attached hereto as Exhibit A.

Dated: July 17, 2009

Respectfully submitted,

By:     _/s/Jeffrey S. Brinen_
        Jeffrey S. Brinen #20565
        Benjamin H. Shloss #39276
        **KUTNER MILLER BRINEN, P.C.**
        303 E. 17th Avenue, Suite 500
        Denver, CO  80203
        Telephone:  (303) 832-2400
        Facsimile:  (303) 832-1510

## CERTIFICATE OF SERVICE

I do hereby certify that on July 17, 2009, a true and correct copy of the foregoing **NOTICE OF FILING OF AMENDED DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED PLAN OF REORGANIZATION DATED JULY 16, 2009** was deposited in the United States mail, postage prepaid, addressed to the following:

Office of the United States Trustee
Attn: Alan K. Motes, Esq.
999 18th Street, Suite 1551
Denver, Colorado 80202

Mark Joel Kolber, Esq.
Jones & Keller, P.C.
5613 DTC Pkwy., Suite 970
Greenwood Village, CO 80111

Paul F. Hultin, Esq.
Christina J. Valerio, Esq.
Wheeler Trigg O'Donnell, LLP
1801 California Street
Suite 3600
Denver, CO 80202

Joseph G. Rosania, Esq.
Connolly, Rosania & Loftsedt, P.C.
950 Spruce Street, Unit 1C
Louisville, CO 80027

American Express Bank FSB
c/o Beckett & Lee, LLP
POB 3001
Malvern, PA 19355-0701

R. William Rowe, Esq.
Ian Z. Shea, Esq.
Malara & Rickelman, P.C.
1731 Gilpin Street
Denver, CO 80218

William G. Horlbeck, Esq.
216 Sixteenth Street, Suite 1210
Denver, CO 80202

Scott Tarbox, Esq.
Rumler Tarbox Lyden Law Corporation
Denver Centerpoint II
1777 S. Harrison Street, Ste. 1250
Denver, CO 80210

David Cribari, CPA
BKD, LLP
Wells Fargo Center
1700 Lincoln Street, Ste. 1400
Denver, CO 80203-4514

Maria J. Flora, Esq.
1763 Franklin Street
Denver, CO 80218

Tyler D. Kraemer, Esq.
430 North Tejon Street
Suite 300
Colorado Springs, CO 80903

Robert C. Evans, Esq.
823 4th Avenue
Durango, CO 81301

David C. Cribari, CPA
1700 Lincoln Street
Suite 1400
Denver, CO 80203

James Jablonski, Esq.
1801 Broadway
Suite 1100
Denver, CO 80202

Marcus L. Squarrell, Esq.
1560 Broadway
Suite 1400
Denver, CO 80202

Charles W. Lilley, Esq.
1600 Stout Street
Suite 1100
Denver, CO 80202

*/s/Allison McKnight*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                      )
                                            )       Case No. 08-27561-SBB
ACCENT WINDOWS, INC.                        )
EIN: 84-1610404                             )       Chapter 11
                                            )
      Debtor.                               )

**AMENDED DISCLOSURE STATEMENT TO ACCOMPANY THIRD AMENDED
CHAPTER 11 PLAN OF REORGANIZATION DATED JULY 17, 2009**

**INTRODUCTION**

This Disclosure Statement ("Disclosure Statement") has been prepared by Accent Windows, Inc. (the "Debtor" or "Accent Windows") to accompany its Chapter 11 Plan of Reorganization dated July 17, 2009 (the "Plan") which has been filed in the Debtor's Chapter 11 case. This Disclosure Statement is being provided to all creditors and interest holders of the Debtor. This Disclosure Statement is subject to final approval pursuant to 11 U.S.C. Section 1125 by the United States Bankruptcy Court for the District of Colorado as containing adequate information to enable creditors and interest holders to determine whether to accept the Debtor's Plan. The Court's approval of this Disclosure Statement does not constitute a decision on the merits of the Plan. Issues related to the merits of the Plan and its confirmation will be the subject of a confirmation hearing which is scheduled for _____**DAY, ____ ___, 2009 AT ___:___0 __.m. at the United States Bankruptcy Court, Courtroom E, 721 19th Street, Denver, Colorado 80202.**

THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION. THE COMMISSION HAS SIMILARLY NOT REVIEWED THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT.

This Disclosure Statement is provided to you along with a copy of the Debtor's Plan and a Ballot to be used for voting on the Plan. Please complete the Ballot according to the instructions contained on the Ballot if you intend to vote for or against the Debtor's Plan. Each creditor or interest holder may vote on the Plan by completing the enclosed Ballot and returning it to counsel for the Debtor:

Jeffery S. Brinen, Esq.
Kutner Miller Brinen, P.C.
303 East 17th Avenue
Suite 500
Denver, CO 80203

This Ballot must be received by Kutner Miller Brinen, P.C. no later than ____ ___, **2009**, which date has been set by the Court as the last day to vote on the Plan. Terms contained in this Disclosure Statement, which are defined in the Plan, have the same meaning as set forth in the definitional section of the Plan, Article II.

**Recommendation.** As discussed more fully below, the Debtor firmly believes that the Plan represents the best alternative for providing the maximum value for creditors. The Plan provides creditors with a distribution on their Claims in an amount greater than any other potential known option available to the Debtor. **Again, the Debtor strongly believes that confirmation of the Plan is in the best interest of creditors and recommends that all creditors entitled to vote on the Plan vote to accept the Plan.**

**Voting Requirements.** Pursuant to the Bankruptcy Code, only Classes of Claims or Interests that are "impaired" under the Plan are entitled to vote to accept or reject the Plan. Classes of Claims and Interests that are not impaired are not entitled to vote and are deemed to have accepted the Plan. Voting on the Plan shall be pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Rules, and a Class shall have accepted the Plan if the Plan is accepted by at least two-thirds in amount and more than one-half in number of the Allowed Claims of such Class actually voting.

**Voting Classes.** Each holder of an Allowed Claim in Classes 1, 2, 3, 4, and 5 shall be entitled to vote to accept or reject the Plan.

**Deemed Acceptance of Plan.** Unimpaired classes are conclusively presumed to accept the Plan pursuant to Section 1126(f) of the Bankruptcy Code. No class is unimpaired by the Plan.

2

**Deemed Rejection of Plan**.  Classes that receive and retain nothing under the Plan are deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code.  No Class is deemed to have rejected the Plan.

**One Vote Per Holder.**  If a holder of a Claim holds more than one Claim in any one Class, all Claims of such holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims voting for or against the Plan.

## OVERVIEW OF THE PLAN/MEANS OF EXECUTION

The Plan divides creditors and interest holders into 5 Classes. Treatment of the Classes is discussed in greater detail below and in the Plan.  Class 1 consists of the Allowed Priority Claims, which is unimpaired by the Plan.  Class 2 is comprised of the impaired Allowed Secured Claim of Urban Machinery.  Class 3 consists of all allowed claims of general unsecured creditors.  Class 4 consists of those claimants who hold subordinated rescission claims.  Class 5 consists of the Interests in the Debtor, which is impaired under the Plan.

Pursuant to the Plan, the Debtor shall restructure its debts and obligations and continue to operate its business in the ordinary course of business.  During the course of the bankruptcy case, the Debtor continued with its efforts to manufacture, market, sell and install energy efficient vinyl replacement windows and patio doors while taking cost saving measures to work towards achieving consistent profitability.

The Debtor believes the Plan is feasible.  As discussed in greater detail below, the Debtor has taken sharp cost cutting measures to reduce its expenses to meet its current demand. The Debtor has rejected a number of leases and executory contracts that are no longer profitable for the Debtor.  The Debtor has also renegotiated more favorable terms on its existing commercial real property leases.

## CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 of the United States Bankruptcy Code is designed to allow for the rehabilitation and reorganization of financially troubled entities or individuals.  Chapter 11 allows the Debtor to retain its assets during administration of its Chapter 11 case as debtor-in-possession and following

3

confirmation of a plan as reorganized debtor or as provided in the Plan. Once confirmation of a Plan of Reorganization is approved by the Court, the Plan of Reorganization is the permanent restructuring of the Debtor's financial obligations. The Plan also provides a means through which the Debtor will restructure or repay its obligations. The Plan will provide the Debtor with an opportunity to maximize the return for creditors through the liquidation of unnecessary assets and through continued operations.

The Plan of Reorganization divides creditors into classes of similarly situated creditors. All creditors of the same Class are treated in a similar fashion. All member Interests are also classified and treated alike. Each Class of creditors or interest holders is either impaired or unimpaired under the Plan. A Class is unimpaired if the Plan leaves unaltered the legal, equitable and contractual rights to which each creditor in the class is entitled. Alternatively, a claimant is unimpaired if the Plan provides for the cure of a default and reinstatement of the maturity date of the Claim as it existed prior to the default.

The Bankruptcy Court set a bar date establishing January 8, 2009 as the last date for filing Proofs of Claim. The Plan provides that Claims and Interests of all Classes shall be allowed only if evidenced by a timely filed Proof of Claim or Interest or which otherwise appear in the Schedules filed by the Debtor and are not scheduled as disputed, contingent or unliquidated unless subsequently allowed by the Court. Creditors may check as to whether or not their Claims have been scheduled as disputed, contingent or unliquidated by reviewing the Schedules and the amendments thereto filed by the Debtor in the Bankruptcy Court for the District of Colorado. Alternatively, creditors may contact counsel for the Debtor or the Debtor directly in order to determine how they have been scheduled.

Chapter 11 does not require that each holder of a Claim or Interest vote in favor of the Plan in order for the Court to confirm the Plan. The Plan, however, must be accepted by at least one impaired Class of Claims by a majority in number and two thirds in amount, without including insider acceptance of those Claims of such Class actually voting on the Plan. Assuming one impaired Class votes to accept the Plan, it may be confirmed over its rejection by other Classes if the Court finds that the Plan does not discriminate unfairly and is fair and equitable with respect to each Class of Claims or Interests that is impaired under and has not accepted the Plan. Since the Debtor believes that the Plan provides the best alternative for creditors, all creditors are urged to vote to

4

accept the Plan.

If all Classes of Claims and Interests vote to accept the Plan, the Court may confirm the Plan. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation. Among other things, Section 1129 requires that the Plan be in the best interest of the holders of Claims and Interests and be feasible through a showing that confirmation will not be followed by the need for further financial reorganization of the Debtor.

## BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING

Accent Window Products, Inc. was founded in 1982, at which time its primary business was manufacturing storm windows. By the late 1980's, this company was manufacturing vinyl replacement windows, and selling products on a wholesale basis. In 1995, the Debtor entity, Accent Windows, Inc., was formed and sold windows directly to homeowners on a retail basis. In 1997, the two entities merged and Accent Windows, Inc. was the surviving entity. Thereafter, the Debtor terminated its wholesale operation in order to concentrate solely on manufacturing and retail sales.

Accent sells a variety of replacement windows and doors, all of which are among the highest quality available on the market, both in terms of durability and energy efficiency rating. Accent provides a lifetime warranty for its products, and intends to honor these warranties post-petition. Thus, warranties that were provided for all products sold and installed by Accent prior to the filing of this Bankruptcy Case shall be honored. The Debtor offers different performing glass packages depending on the needs and budget of its customers, from the most economical and least efficient clear glass to the more economical 4.0 Lo-elite glass to the top of the line 9.1 Lo-elite Heat Mirror glass. In addition, the type of gas (argon, krypton, or both) within the window impacts the efficiency of the window or door. The Debtor's array of products allows it to serve a broad market effectively.

In order to reach consumers outside of the Denver metropolitan area, the Debtor entered into license agreements with five licensees to cover the following areas: 1) Phoenix, Arizona; 2) Grand Junction, Colorado; 3) Billings, Montana; 4) Salt Lake City, Utah; and 5) Albuquerque, New Mexico. As discussed in greater detail below, the licensee for Arizona and New Mexico terminated its license agreement with the Debtor, which resulted in litigation. The Debtor has entered into a settlement agreement with the Arizona and New Mexico licensee and is waiting for court approval of

that settlement, which is explained in greater detail below.  The Debtor is also in litigation with its Montana licensee.

At approximately the same time as the merger, the founders, Tim and Sherry Marcovich, decided to retire from the business.  They retained virtually all of the voting shares of stock, but conveyed the majority of the non-voting stock of the Debtor in equal shares to Terry Marcovich (their son), Tracy Klein (their daughter), and Richard Roeding (their friend and long-time employee).  Roeding was tasked with handling the finances and operations, while Terry Marcovich was to handle sales and marketing.

Eventually, it became apparent to Terry Marcovich that Roeding had placed many of his friends and family members on the Debtor's payroll, in most instances these jobs were unnecessary to the Debtor's operations, and the pay was substantially higher than justified.  Further, Roeding was using funds of Accent to pay his personal, and in some cases extravagant, expenses.  As a result, in March 2007 Roeding was ousted from Accent.  At that time, Accent had accounts payable of approximately $2.6 million and was in poor financial condition.  By cutting some 20 employees after Roeding's departure, and otherwise cutting costs, payables were reduced to $500,000 by the end of 2007, and the business appeared to have mostly recovered from Roeding's tenure.  However, in 2008 the economy began a precipitous decline, and along with the downturn in the economy, Accent's sales also dropped.  The Debtor started experiencing cash flow issues in the first quarter of 2008, and was unable to make payments to the IRS for payroll taxes.

Moreover, Roeding filed a lawsuit against the Debtor and others asserting various claims.  The Debtor had insurance to cover such claims, and the insurance carrier appointed counsel to represent the Debtor.  Some months thereafter the insurance company reneged on its agreement to provide coverage, and sued the Debtor for a declaratory judgment that the claims asserted in Roeding's lawsuit were not subject to coverage by the Debtor's insurance policy.  The Debtor believes that Roeding's claims are frivolous, groundless, and vexatious, and that they are covered by insurance.  However, the lawsuit, in conjunction with declining sales and the threat of a tax lien, forced the Debtor to file a Chapter 11 bankruptcy case.  Roeding subsequently filed a voluntary petition pursuant to Chapter 7 of the Bankruptcy Code, and any claims he held are now property of his bankruptcy estate.

## DESCRIPTION OF ASSETS

As of February, 2009, the value of the Debtor's assets was as follows:

| Asset | Book Value | Liquidation Value |
|---|---|---|
| Cash | $72,117 | $72,117 |
| Accounts Receivable | $167,209 | $41,802 |
| Note Receivable (Insiders) | $22,700 | $0.00 |
| Employee Loans | $395 | $0.00 |
| Inventory | $418,000 | $125,400 |
| Trade Accounts | $10,236 | $0.00 |
| Furniture and Equipment | $250,072 | $25,007 |
| Transportation Equipment | $3,383 | $2,200 |
| Machinery and Equipment | $1,222,666 | $366,799 |
| Deposits | $24,193 | $0.00 |
| Pre-Paid Insurance | $17.680 | $0.00 |
| **Total:** | $2,208,651 | $633,325 |

The liquidation of the Debtor's personal property is significantly lower than its book value. The accounts receivable is on account of unpaid licensee fees. The licensees have refused to make payment to Accent and the Debtor has commenced litigation with the licensees. There would be significant cost of litigation for a Chapter 7 trustee and the likelihood of prevailing and collecting on a judgment is uncertain. Accordingly, it is assumed the value of accounts receivable in a liquidation is 25% of book value. The notes receivable from insiders has no value in a liquidation as the liquidation of the company would mean the insiders no longer have income and may need to seek bankruptcy protection. The employee loans are also valued at $0.00 in a liquidation as the employees would be unemployed and unable to pay back to loans if the company is liquidated. In a liquidation, inventory has a value of 30% of its book value. Trade accounts are trades of services for product for which the Debtor has provided but the services are yet to be provided and thus have no value in a liquidation. The Debtor's telephone system, desks, computers and other furniture and

7

equipment are used and old, and therefore have a value of 10% of book value. The Debtor's trucks and other transportation equipment are old and worth less than book value. The machinery and equipment is used and designed for the Debtor's needs, and therefore has a 30% liquidation value. Deposits and pre-paid insurance have no value in a liquidation as they would be offset against existing claims of deposit holders.

The Debtor is reserving the right to bring avoidance actions pursuant to 11 U.S.C. §§ 545 through 550 and state law based fraudulent conveyance actions. The total payments made to creditors within the 90 days prior to the Petition Date were approximately $780,000. Payments of $32,000 were made to insiders within the year preceding the Petition Date. At this point the Debtor does not believe such claims are viable.

Most of the transfers are likely subject to legitimate statutory defenses permitted under the Bankruptcy Code and state law defenses. If the actions were brought, the Debtor would also incur costs and expenses in the form of legal fees. In addition, there is no way for the Debtor to determine the collectability of any awarded judgments.

With respect to the approximate $780,000 paid by the Debtor within the 90 days preceding the Petition Date, the vast majority of these payments appear to have been made in the ordinary course of business and therefore are subject to defense pursuant to 11 U.S.C. § 547(c)(2). Specifically, the Debtor traditionally pays its creditors according to invoice terms. A review of the Debtor's accounts payable aging shows that during the 90 days prior to the Petition Date, the Debtor was paying its creditors according to invoiced terms and in the ordinary course of business. During this period, the Debtor was not paying old outstanding payables, thus it appears no creditors were preferred and payments to creditors in the 90 days prior to the Petition Date were made in the ordinary course. In addition, some creditors provided new value after the transfers, making the claims subject to defense under 11 U.S.C. § 547(c)(4). A small amount of the transfers between the Debtor and the creditors may be contemporaneous and therefore are subject to defense pursuant to 11 U.S.C. § 547(c)(1).

With respect to the insider payments made within one year of the Petition Date, $5,500 was paid to Andy Klein on account of a loan. The remainder, approximately $26,411 was paid to Tim and Sherry Marcovich on account of salary paid in the Debtor's ordinary course.

8

From a practical standpoint, the viability of the Plan and, in turn, the distribution to creditors is dependent upon the Debtor's on-going business operations.  The bringing of avoidance actions will only strain the relationship the Debtor has with its vital suppliers and only stands to harm rather then help the Debtor's reorganization prospects and ultimately the distribution to creditors.

## DESCRIPTION OF LIABILITIES

### A.    Priority Claims

#### 1.  Priority Claims

Priority Claims are defined in the Plan as any pre-petition Claim entitled to a priority payment under 11 U.S.C. § 507(a) of the Bankruptcy Code, excluding any Administrative Claim or Tax Claim.

#### 2.  Administrative Claims

Administrative Claims are those Claims for payment of an administrative expense of a kind specified in §503(b) or §1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to §507(a)(2) of the Bankruptcy Code, including, but not limited to: (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the estates and operating the businesses of the Debtors, including wages, salaries, or commissions for services rendered after the commencement of these Chapter 11 Cases; (b) Professional Fee Claims; (c) all fees and charges assessed against the estate under 28 U.S.C. §1930; and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under §546(c)(2)(A) of the Bankruptcy Code. The Administrative Claims for the professional fees incurred during the case follow.

The Debtor retained Kutner Miller Brinen, P.C. ("KMB") as its bankruptcy counsel. The Debtor provided KMB with a retainer in the amount of $23,293.00 for post-petition services.  An Order was entered authorizing KMB to be paid 75% of its monthly fees and 100% of costs on a monthly basis.  KMB has not filed an interim fee application.  The Debtor estimates that the total legal fees and costs for KMB as of the estimated date on which the Plan will become effective, August 1, 2009, will be approximately $75,000, including the retainer.  These fees could increase or

9

decrease depending on the level of litigation over the Plan and Claims.

The Debtor also retained the Office of James Jablonski ("Jablonski") to serve as special litigation counsel to handle litigation commenced in the United States District Court for the District of Colorado, captioned *Employers Mutual Casualty Company v. Accent Windows, Inc., Timothy J. Marcovich, Sherry M. Marcovich, Terry G. Marcovich, and Tracy Lynn Marcovich*, Civil Action No. 1:08-cv-01784-REB-CBS (the "Insurance Litigation"). In the Insurance Litigation, the Plaintiff, Employers Mutual Casualty (EMC) seeks a declaration that it owes no duty to defend or indemnify Accent and its shareholders in connection with a separate lawsuit brought in Douglas County District Court captioned *Richard Roeding v. Accent Windows, Inc., et. al.* Jablonski has not filed an interim fee application. The Debtor estimates that the total legal fees and costs for Jablonski as of the estimated date on which the Plan will become effective, August 1, 2009, will be $13,000. These fees could increase or decrease depending on the level of litigation required to resolve the Insurance Litigation.

The Debtor retained Rumler Tarbox Lyden Law Corporation, P.C. ("RTL") to serve as special corporate counsel to handle all corporate matters for which counsel is required or requested by the Debtor during the pendency of this bankruptcy proceeding, including without limitation, matters relating to employee issues, tax issues, lease negotiations, warranty issues, general contract negotiations and drafting, corporate governance issues, and licensee issues. RTL has not filed an interim fee application. RTL was provided a retainer in the amount of $5,000. The Debtor estimates that the total legal fees and costs for RTL as of the estimated date on which the Plan will become effective, August 1, 2009, will be approximately $46,000, not including the retainer.

The Debtor retained BKD, LLP ("BKD") to serve as its accountant. BKD received a retainer in the amount of $10,000. BKD has filed an interim fee application fees and costs for the period from November 28, 2008 to December 31, 2008 in the amount of $15,341.25, which application was approved by the Court. BKD was provided a retainer in the amount of $10,000. The Debtor estimates that the total accounting fees and costs for BKD as of the estimated date on which the Plan will become effective, August 1, 2009, will be $34,000 including the retainer.

The Court set January 8, 2009 as the last date for parties in interest to file requests for administrative expense claims pursuant to Code § 503(b)(9). Lane Supply Company was the only

10

party to file an application pursuant to Code § 503(b)(9). The parties stipulated that Lane Supply Company will hold an allowed claim pursuant to Code § 503(b)(9) in the amount of $7,523.78. The Debtor has been making monthly payments to Lane Supply Company and it is anticipate that as of the estimated date on which the Plan will become effective, August 1, 2009, the administrative expense claim will be satisfied in full.

The Debtor has paid its administrative expenses in the ordinary course of business during the course of the bankruptcy case, and therefore does not believe there will be any other material administrative claims asserted against the estate.

### 3. Tax Claims

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. §507(a)(8). The Internal Revenue Service holds an unsecured priority Tax Claim in the amount of $641,125.82 for second, third, and fourth quarter 2008 wage withholding taxes. No other taxing authority has filed a proof of claim.

### 4. Employee Claims

Pursuant to 11 U.S.C. § 507(a)(4), wages, salaries and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950 per employee earned within the 180 days prior to the Petition Date are entitled to priority. The Court entered an Order authorizing the Debtor to pay during the bankruptcy case any pre-Petition Date wage claims. Accordingly, there are no outstanding priority wage claims.

## C.    Leases and Executory Contracts

The Debtor was party to several pre-Petition Date leases or executory contracts. Under the terms of the Plan, the Debtor is assuming all executory contracts and unexpired leases: (a) previously assumed by the Debtor pursuant to Court Order, (b) for which a motion to assume has been filed and is pending, and (c) specifically listed on Exhibit A of the Plan. The Debtor intends on assuming all executory contracts as listed on Exhibit A of the Plan. The Debtor maintains the right to modify Exhibit A of the Plan through the Plan Confirmation Date. Confirmation of the Plan shall constitute a determination that the payments to be made to creditors of assumed leases or executory contracts pursuant to the Plan satisfies all conditions precedent set forth in 11 U.S.C. § 365.

11

The Debtor is rejecting all executory contracts and unexpired leases previously rejected by Court Order, subject to a pending motion to reject, or not specifically assumed in accordance with the Plan. For executory contracts and unexpired leases rejected by Court Order prior to the bar date of January 8, 2009, proofs of Claim with respect to Claims arising from such rejection shall have been filed by such bar date. Proofs of Claim with respect to Claims arising from the rejection of any other executory contract or unexpired lease shall be filed with the Court within twenty (20) days after the later of (i) the date of the Court order approving the Debtor's rejection of such executory contract or unexpired lease or (ii) the Confirmation Date.

**D.     Non-Priority Unsecured Claims**

The Debtor has a number of unsecured pre-Petition Date creditors. Several of the unsecured creditors have filed proofs of Claim. The Debtor has compiled a list of the Claims which are scheduled in the bankruptcy case and the Claims filed by creditors. To the extent that a creditor who was scheduled by the Debtor filed a Claim, the amount of the Claim as filed by the creditor is considered in the analysis.

Class 3 is comprised of general unsecured creditors holding allowed claims. Attached hereto as Exhibit A is the general unsecured Class 3 Claims list for the Debtor. The total amount of Class 3 Claims asserted against the Debtor's estate is $2,670,488, which does not include an unsecured claim held by insiders Tim and Sherry Marcovich in the amount of $1,129,480. The claim held by Tim and Sherry Marcovich is excluded solely because they will not participate in any distribution to Class 3 creditors. The amount of debt that will likely be allowed for purposes of distribution as Class 3 unsecured creditors based upon the Debtor's books and records, exclusive of interest, is approximately $2,670,488.

Class 4 is comprised of subordinated rescission claims. If allowed, Class 4 claims will be subordinate to other general unsecured claims.

## DESCRIPTION OF THE PLAN

The Debtor filed its Third Amended Plan of Reorganization with the United States Bankruptcy Court for the District of Colorado on July 17, 2009. This Plan provides for the reorganization of the Debtor under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the

12

Debtor shall restructure its debts and obligations and continue to operate in the ordinary course of business. The Plan provides for the specification and treatment of all creditors and Interest holders of the Debtor. The Plan identifies whether each Class is impaired or unimpaired. A Class is unimpaired only if the Plan leaves unaltered the legal, equitable or contractual obligations between the Debtor and the unimpaired claimants or interest holders. The following is a brief summary of the Plan. The actual text of the Plan should be reviewed for more specific detail.

As provided in § 1123(a)(1) of the Bankruptcy Code, the Priority, Administrative and Tax Claims against the Debtor are not designated as classes. The holders of such Allowed Claims will be paid in full, unless otherwise agreed, and are not entitled to vote on the Plan.

The Plan divides the creditors into separate classes. The classes are set forth as follows:

Class 1 – All Allowed Unsecured Claims specified in Section 507(a)(3), 507(a)(4) or 507(a)(5) of the Code as having priority.

Class 2 – The Allowed Secured Claim held by the Urban Machinery.

Class 3 – The Allowed claims held by unsecured creditors.

Class 4 – All subordinated rescission claims.

Class 5 - The Interests held by pre-confirmation members.


A.    **CLAIMS**

**1. Unclassified Priority Claims**

    a.    **Administrative Claims**

The holders of Allowed Claims of the type specified in Section 507(a)(2) of the Code, costs and expenses of administration, shall receive cash equal to the Allowed amount of such Claim or a lesser amount or different treatment as may be acceptable and agreed to by particular holders of such Claims. Such Claims shall be paid in full on the Effective Date of the Plan or treated as otherwise agreed to by the particular holders of such Claims. Section 507(a)(2) Administrative Claims that are Allowed by the Court after the Effective Date of the Plan shall be paid upon Allowance. Allowed Administrative Expense Claims must be paid in full prior to distribution to Class 3 allowed unsecured creditors, and may be paid from the Unsecured Creditor's Account.

All Administrative Claims of professionals are subject to Court approval on notice to

13

creditors with an opportunity for a hearing. Certain professional fees may be paid pursuant to interim fee applications and upon Court allowance. The fees set forth below are the total fees expected in the case as of the estimated Confirmation Date of the Plan.

The Debtor expects that KMB, Debtor's bankruptcy counsel, will hold a cost and expense of administration claim for legal fees as of the Confirmation Date of the Plan estimated to total $75,000. KMB was being paid monthly during the case pursuant to the approved interim payment procedure. The Debtor provided KMB with a retainer in the amount of $23,293.00, which would be deducted from the total amount of estimated fees.

The Debtor expects that Jablonski, Debtor's special litigation counsel, will hold a cost and expense of administration claim for legal fees as of the Confirmation Date of the Plan estimated to total $13,000.

The Debtor expects that RTL, Debtor's corporate counsel, will hold a cost and expense of administration claim for legal fees as of the Confirmation Date of the Plan estimated to total $51,000. RTL was provided a retainer in the amount of $5,000, which will be applied against the balance.

The Debtor expects that BKD, Debtor's accountant, will hold a cost and expense of administration claim for accounting fees as of the Confirmation Date of the Plan estimated to total $34,000. BKD was provided a retainer in the amount of $10,000, which will be applied against the balance.

Lane Supply Company holds an allowed claim pursuant to Code § 503(b)(9) in the amount of $7,523.78. The Debtor has been making monthly payments to Lane Supply Company and it is anticipate that as of the estimated date on which the Plan will become effective, August 1, 2009, the administrative expense claim will be satisfied in full.

The Debtor has paid its other administrative expenses in the ordinary course and therefore no other material administrative expense claims are anticipated.

**b.   Tax Claims**

Tax Claims are any Claim of a governmental unit for taxes entitled to priority pursuant to 11 U.S.C. §507(a)(8). The Internal Revenue Service has filed a Proof of Claim asserting a priority Tax Claim in the amount of $641,125.82. No other taxing authority has filed a proof of claim.

14

The Internal Revenue Service priority Tax Claim shall be amortized over a 53-month period or such other period as may be fixed by the Court. The balance will be paid in monthly installments over 53 months as follows: $9,500 per month in 2009, $11,500 per month in 2010, $12,000 per month in 2011, $12,500 per month in 2012, and $15,213 per month from January through November 2013. The Debtor shall pay all amounts due for the IRS claim on or before November 1, 2013. Interest shall accrue on the outstanding balance at the rate of applicable statutory rate per annum until paid in full. The statutory rate in effect as of the date this Disclosure Statement was filed was 4.00% per annum. Payments shall commence within thirty (30) days after confirmation of the Debtor's Plan.

**2. Classified Priority Claims**

**a. Class 1**

The Allowed Class 1 Priority Claims shall be paid in full on the Effective Date. The Class 1 Claims for certain pre-petition wages and employee Claims are more particularly described in Sections 507(a)(4), 507(a)(5), and 507(a)(6) of the Code. The Debtor does not owe any Employee Priority Claims.

**3. Secured Claims**

**a. Class 2, Urban Machinery.** Class 2 consists of the allowed secured claims of Urban Machinery. Class 2 is impaired by the Plan. The Class 2 claim will be treated under the Plan as follows:

a.      The principal amount of the Class 2 claim will be allowed in an amount to be determined by the Court on or before the Confirmation Date, or an amount agreed upon by the Debtor and the Class 2 claimant on or before the Confirmation Date. Pursuant to 11 U.S.C. § 506, the claim is secured up to the value of the collateral for the claim and is an unsecured Class 3 claim for the balance.

b.      The Class 2 claim will bear interest at the rate of: (i) 6% per annum commencing on the Effective Date of the Plan; or (ii) if the Class 2 claimant objects to such rate in writing and serves a copy of such objection on the

Debtor at least fifteen (15) days prior to the commencement of the confirmation hearing, such rate will be determined by the Court as necessary to satisfy the requirements of 11 U.S.C. § 1129(b) of the Code; or (iii) such other rate as agreed by Debtor and the Class 2 claimant.

c.      The Class 2 claimant will retain all allowed and perfected liens that secured its claim as of the petition date. The Class 2 claim may be prepaid at any time without penalty.

d.      The Class 2 claim will be amortized over a one-year period or such other period as may be fixed by the Court and paid in equal monthly installments. Such payments shall commence within thirty (30) days after confirmation of the Debtor's Plan. Assuming the principal balance owed on the Class 2 claim is $11,557, the monthly payment will be $995.

**4. General Unsecured Claims**

Class 3 consists of the unsecured creditors of Accent who hold Allowed Claims that were either scheduled by the Debtor as undisputed, or subject to timely filed proofs of claim to which the Debtor does not successfully object. Class 3 shall receive payment of their Allowed Claims as follows:

Commencing with the month following the Effective Date of the Plan, and continuing on the tenth day of each successive month for five years, the Debtor will make a deposit into a segregated account calculated as described herein. The monthly deposit shall be in an amount equal to a percentage of the Debtor's Gross Revenue actually collected during the prior quarter. The percentage shall be calculated based upon the following scale:

| Payback Percentage | Quarterly Gross Revenue |
| --- | --- |
| 2.50% | $0<>$1.5M |
| 2.75% | $1.5M<>$1.75M |
| 3.00% | $1.75M<>$2.0M |
| 6.00% | $2.0M<>$2.2M |
| 6.50% | $2.2M<>$2.4M |

16

| 7.00% | $2.4M<>$2.6M |
|---|---|
| 7.50% | $2.6M<>$2.8M |
| 8.00% | $2.8M<>$3.0M |
| 8.50% | $3.0M<>$3.5M |
| 9.00% | $3.5M<>$4.0M |
| 9.50% | $4.0M<>$4.5M |
| 10.00% | $4.5M+ |

Over a five-year period from the Effective Date of the Plan, Class 3(b) claimants will receive a pro-rata portion of the Debtor's Gross Revenue. At the end of the first month of each quarter, the Debtor will multiply the Gross Revenue for that month by three to obtain an estimate of quarterly Gross Revenue. The Debtor will use that three-month quarterly estimate to determine the percentage on the table set forth above. The Debtor will deposit that percentage of the first month's Gross Revenue into the Unsecured Creditor Account within fifteen (15) days of the end of the first month. At the end of the second month of the quarter, the Debtor will average the Gross Revenue for the first two months of the quarter, and then multiple that figure by three. The Debtor will use that three-month quarterly estimate to determine the percentage on the table set forth above. The Debtor will deposit that percentage of the second month's Gross Revenue into the Unsecured Creditor Account within fifteen (15) days of the end of the second month. At the end of the third month of the quarter, the Debtor will determine its actual Gross Revenue for the quarter, and within fifteen (15) days of the end of the third month add any amount as necessary to reach the applicable percentage of quarterly Gross Revenue on the table set forth above. Each time three monthly deposits have been made to the Unsecured Creditor Account, the Debtor shall make a distribution to Class 3 on a pro-rata basis within ten days of making the third deposit.

For example, if the Debtor collects Gross Revenue of $400,000 in the first month of a quarter, the Debtor will deposit 2.5% of that amount or $10,000 in the Unsecured Creditor Account. If the Debtor collects $700,000 in the second month of that quarter, the Debtor will deposit 2.75% of that amount or $19,250 in the Unsecured Creditor Account. After two months the total amount in the Unsecured Creditor Account will be $29,250. If the Debtor then collects $750,000 in the third month of that quarter, the total quarterly Gross Revenue will amount to $1,850,000. That requires the Debtor to pay a total of 3% for that quarter, or $55,500. The Debtor will be required to add

17

$26,250 to the Unsecured Creditor Account in order to reach the required 3% of Gross Revenue for the quarter.

Interest shall accrue on the Class 3 Allowed Claims at the rate of 3.25% per annum beginning on the Effective Date and continuing during the period of the Plan. Notwithstanding that interest shall begin to accrue on the Effective Date, payments of interest shall not be required until the first quarter payment in 2011, which shall include interest accrued from January 1, 2011. From and after the first quarter of 2011, Accrued interest for each quarter shall be paid in addition to and at the same time as payments of the quarterly distribution to Class 3. Any interest that accrues and is unpaid during the period from the Effective Date until January 1, 2011 ("Accrued Interest"), shall be due and payable in full at such time as the Class 3 creditors have been paid 50% of their Allowed Claims, and the Debtor shall have the right to pay such Accrued Interest at any time and in any increments it chooses prior to the date the Accrued Interest is due in full. Additionally, insiders shall not be entitled to receive any distributions from Net Income until the Accrued Interest is paid in full

The Debtor anticipates that it will have allowed unsecured claims in the amount of approximately $2,670,488 eligible for distribution as Class 3 creditors. Based upon the Debtor's five-year financial projections, it will have deposited a total of $2,670,488 into the Unsecured Creditor Account by April 2014. Assuming the allowed general unsecured claims total $2,670,488, the estimated pay out to each general unsecured creditor is 100% of its claim. If is the Class 3 claimants are paid in full prior to the end of five years, as projected, the deposits to the segregated account will cease.

Insiders who hold Allowed unsecured claims shall not participate in any distribution to Class 3 creditors. The only insiders who hold such claims are Tim Marcovich and Sherry Marcovich, and they will not share in the distribution to Class 3 creditors.

All Class 3 creditors have the option to accept shares of stock in the reorganized Debtor, in lieu of receiving cash payments. New interests in the reorganized Debtor shall be issued on the Effective Date of the Plan to those Class 3 claimants who elect to receive shares in the reorganized Debtor in satisfaction of their claims and in lieu of receiving cash payments as Class 3 claimants. Shares of stock shall be issued to Class 3 at the rate of one share per one thousand dollars of claim.

18

All Class 3 claimants shall have the option of receiving stock in lieu of their claims and all shares shall be issued on a pro-rata basis to Class 3 claimants who elect to receive stock. If a Class 3 creditor is interested in receiving shares of stock rather than payment, they must contact either the Debtor or Debtor's counsel prior to the date of the hearing on confirmation of the Plan of Reorganization. If Class 3 creditors fail to contact the Debtor or Debtor's counsel in advance of the confirmation hearing, their option to receive shares of stock in the reorganized Debtor shall be terminated. Contact information is as follows:

> Accent Windows, Inc.
> 12300 Pecos Street
> Westminster, CO
> Emails: terrym@accentwindows.com
>            andyk@accentwindows.com
> Tel: 303-420-2002
> Fax: 720-536-2104
>
> Debtor's counsel:
> Jeffrey S. Brinen, Esq.
> Kutner Miller Brinen, P.C.
> 303 East 17th Avenue, Suite 500
> Denver, CO 80203
> Tel: 303-832-2418
> Fax: 303-832-1510
> Email:jsb@kutnerlaw.com

## 5. Holders of Subordinated Rescission Claims

Class 4 is comprised of Claims arising from the rescission of a purchase or sale of an Interest of Accent, for damages arising from the purchase or sale of such an Interest, or for reimbursement or contribution allowed under Code § 502 on account of such an Interest. Pursuant to Code § 510, such rescission Claims shall be subordinated to all other creditor classes under this Plan. This class includes Richard Roeding. Mr. Roeding filed a Chapter 7 bankruptcy case on or about March 7, 2009, and thus, the Chapter 7 trustee may claim any of Mr. Roeding's rights under the Plan. The Debtor intends to object to Roeding's claim. At the time that Tim and Sherry Marcovich stepped aside and turned over operation of Accent to Roeding and Terry Marcovich, Roeding purchased

19

stock for an established price, and signed a Stock Restriction Agreement ("SRA"). The SRA provided that upon termination of Roeding's employment from Accent, that Accent had the right to repurchase the stock based upon the net book value of the company. The Debtor will demonstrate that at the time Roeding's employment was terminated, Accent had a negative book value. In the event that Roeding's claim is not disallowed, the Class 4 claimants will receive a distribution only if all Class 3 creditors are paid in full.

### 6. Interests

Class 5 includes the Interests in Accent held by the pre-confirmation shareholders. Class 5 is impaired and this paragraph shall govern its treatment. All interests in Accent held shall be cancelled on the Effective Date of the Plan. The existing pre-confirmation Interests held by Class 5 shall be cancelled as of the Effective Date of the Plan. New interests in the reorganized Debtor shall be issued on the Effective Date of the Plan to those Class 3 claimants who elect to receive shares in the reorganized Debtor in satisfaction of their claims and in lieu of receiving cash payments as Class 3 claimants. Shares of stock shall be issued to Class 3 at the rate of one share per one thousand dollars of claim. All Class 3 claimants shall have the option of receiving stock in lieu of their claims and all shares shall be issued on a pro-rata basis to Class 3 claimants who elect to receive stock

### B.      MEANS FOR EXECUTION OF THE PLAN

The Debtor filed its Amended Plan of Reorganization with the United States Bankruptcy Court for the District of Colorado on May 18, 2009. The Plan provides for the reorganization of the Debtor under Chapter 11 of the Bankruptcy Code. Pursuant to the Plan, the Debtor is restructuring its debts and obligations and will continue to operate its existing business, and seek out and enter into new license agreements for sale and distribution of its products outside of Colorado.

### C.      MANAGEMENT

The Debtor's officers and directors and their salaries are:

Terry Marcovich, President and Board of Director, $150,000

Andy Kline, Vice President and Treasurer, $140,000

Lindsey Marcovich, Secretary, $85,000

Terry Marcovich, Andy Klein, and Lindsey Marcovich are the only insiders of the Debtor who will receive salaries until the Class 3 claims are paid in full, or for a period of five years from the Effective Date, whichever occurs first.  The salaries set forth above shall not increase for the remainder of the year 2009.  For each successive calendar year the salaries may be increased by an amount no greater than the annual percentage increase in the consumer price index published by the Federal Bureau of Labor Statistics.  Additionally, fifty (50%) percent of the amount of any distributions of net profit to officers or insiders must be paid toward Class 3 claims until such claims are paid in full.

## ADMINISTRATIVE CLAIM BAR DATE

If the Plan is confirmed, all applications for allowance and payment of Administrative Claims, including Professional Fees, must be filed within 45 days following the Effective Date of the Plan, unless additional time is timely requested.

## CREDTIORS COMMITTEE

The Creditors Committee appointed in this case shall terminate on the date the Court enters a Final Decree pursuant to Section 350(a) of the Bankruptcy Code, or at such earlier date as the Creditors Committee deems appropriate.  Subsequent to the Effective Date, the Committee's participation in this case shall be limited to any and all matters, directly or indirectly, involving Richard Roeding ("Roeding"), Roeding's Chapter 7 bankruptcy estate, Roeding's claim asserted in this case, and/or Roeding's treatment under this Plan.  Additionally, the Debtor's liability for Committee expenses or attorneys' fees incurred by Committee counsel subsequent to the Effective Date shall not exceed the amount of $5,000.  Counsel to the Creditors Committee shall not be required to seek Bankruptcy Court approval for fees incurred after the Effective Date.

## PLAN FEASIBILITY

The Debtor's Plan is feasible. During the bankruptcy case, the Debtor has significantly reduced its operating expenses.  Employee salaries, including the President's, have been reduced by an average of 25%.  The Debtor has terminated or renegotiated existing leases or contracts which resulted in lower expenses.  Specifically, the Debtor terminated the lease in Colorado Spring

21

(showroom) commercial real property lease for a net savings of over $10,000 per month. The Pecos commercial real property lease has been reduced to $25,000 a month from $38,000. The Debtor has also terminated contracts with advertising companies and renegotiated lease rates on office equipment. Furthermore, the Debtor has reduced its inventory from approximately $650,000 (value at the time of filing) to approximately $400,000 as of March 30, 2009. The Debtor anticipates a further reduction of $200,000 over the next three months.

The Debtor recently had a fantastic presence at the 2009 Denver Home and Garden Show which took place in early February, 2009. The exposure from the show has proven to be extremely valuable. By having the largest and well designed booths at the show, the Debtor showed potential customers that Accent is still in business, is a viable company and are still offer some of the best products. Since the home show, Accent has run over $1,000,000 in demonstrations from leads obtained at the Home Show. These leads take, on average, 3 months to close. The Debtor has closed approximately $150,000 in sales from leads from the Home Show and it is estimated will close another $200,000 before the end of May, 2009.

The Debtor has also revamped its marketing strategy. Historically, Accent would schedule a four week run at various times. For the past few months, Lindsey Marcovich, Accent's Marketing Director, has worked closely with Accent's advertising buyer to target specific time slots on television that will generate the most leads possible. Based on Accent's current television advertising budget, Accent's return on investment has been steadily increasing. The Debtor has also engaged a canvasser to target specific areas of town. While Accent just started this program, it is anticipated that it will result in leads that otherwise would not be available.

Accent's officers have also taken a more active role in the sale process, conducting weekly meetings with sales representatives to discuss potential deals and to strategize about the most effective ways to get deals closed. The officers also make follow up calls to certain potential customers which has resulted in the closing of more deals.

One of the greatest opportunities for business development is the federal government's Stimulus Package and the Governor's Energy Office. Inside the Stimulus Package is a $1,500 tax credit to homeowners who replace their windows. At least 90% of the windows manufactured by Accent meet the tax credit requirement. This has been a huge selling point to potential customers.

22

Furthermore, the Governor's Energy Office has earmarked around $80,000,000 for their Weatherization Program and another $100,000,000 in energy efficient projects. Accent actively pursuing these state funded projects with hopes to be awarded the contracts for window replacement. Accent was asked by the Governor's Energy Office to be an exhibitor at the Energy Efficiency Exhibition which took place on the east lawn of the Capital Building in March, 2009. Accent was the only window company asked to display at the exhibition.

Accent is also making effort to increase its product lines. Accent has been engaging with solar companies. Accent has been courted by two solar companies out of Boulder to talk about a partnership. These companies realize the synergies between efficient windows and solar power. Accent is optimistic it will have a partnership with one of these companies in the near future. Additionally, one of the companies has requested Accent to design a "mounting system" for solar panels made out of vinyl. The developer of the idea is contemplating on patenting the product and licensing it to Accent to manufacture.

The Debtor intends to open its own office and showroom in Albuquerque, New Mexico in order to rebuild the business it had through its licensee. The Debtor has hired outstanding personnel in Albuquerque, and believes that it will quickly achieve the same or higher level of net income that it received from its former licensee. The Debtor has recently settled the litigation with its former New Mexico and Arizona licensee and is waiting for court approval on the settlement. The Debtor is currently negotiating with a landlord in Albuquerque in order to facilitate a new lease on a retail location. This retail location is located on the frontage road along Interstate 25. This retail location is visible to travelers along I-25, both northbound and southbound.

While the Debtor has not started advertising in New Mexico, it has been receiving internet leads through the website www.accentwindows.com. The Debtor has hired Valarie Jarocki, sales consultant, to run these leads. Ms. Jarocki has sold over $40,000 in the last three weeks. Ms. Jarocki is a former employee of the Debtor's former licensee in New Mexico and was the top sales associate for the last three years. Ms. Jarocki has been selling Accent Windows for the last ten years and is an extremely valuable asset for the Debtor. The Debtor will begin advertising in the New Mexico market once a retail location has been finalized and approved. The Debtor expects to sell a

23

minimum of $100,000 per month in the New Mexico territory by the end of July 2009, and has a sales goal of $300,000 per month by July 2010.

Additionally, the Debtor has engaged Marvin Cromwell to facilitate the installation of the windows in New Mexico. Mr. Cromwell was the original owner of the New Mexico territory prior to selling his business to Greg Noel (former licensee). Mr. Cromwell currently owns and operates a commercial glazing company called Accent Contract Glazing. Mr. Cromwell is experienced with the installation of Accent Windows and will be a valuable asset for the Debtor.

Attached to this Disclosure Statement as Exhibit B is a projection of the Debtor's operations for the five year term of the Plan. The projections detail the anticipated revenues and expenses, including payments to creditors, of the Debtor under the term of the Plan. Based upon the projections, the Debtor will be able to meet all payment obligations under the Plan.

Funding for the Plan will be derived from the Debtor's ongoing business operations, which is comprised of four lines of business: (a) licensee sales; (b) wholesale sales; (c) commercial sales; and (d) retail installs. The Debtor's expenses are divided into three categories, manufacturing expenses, payroll defense, and selling and administrative expense. In 2009, commencing in July and for the remainder of the year, the Debtor projects $3,125,000 in gross revenue. The Debtor's total expenses before payment to creditors for the same period are projected to be $2,739,145. Creditor payments under the Plan in 2009 are projected to be $145,181. The Debtor also projects a payment of $6,500 to the Office of the United States Trustee for quarterly fees. After all expenses and creditor payments are made, the Debtor projects in 2009 it will have a profit of $234,175.

In 2010 the Debtor projects $6,735,000 in gross revenue. The Debtor's total expenses before payment to creditors for 2010 are projected to be $3,973,247. Creditor payments under the Plan in 2010 are projected to be $329,969. After all expenses and creditor payments are made, the Debtor projects in 2010 it will have a profit of $430,710. It is projected that in June 2010, the Urban Machinery Secured Claim will be satisfied.

In 2011 the Debtor projects $9,512,500 in gross revenue. The Debtor's total expenses before payment to creditors for 2011 are projected to be $7,942,875. Creditor payments under the Plan in 2011 are projected to be $657,988. After all expenses and creditor payments are made, the Debtor projects in 2011 it will have a profit of $851,638.

In 2012 the Debtor projects $10,567,500 in gross revenue. The Debtor's total expenses before payment to creditors for 2012 are projected to be $8,583,544. Creditor payments under the Plan in 2012 are projected to be $768,875. After all expenses and creditor payments are made, the Debtor projects in 2012 it will have a profit of $857,082.

In 2013 the Debtor projects $11,317,500 in gross revenue. The Debtor's total expenses before payment to creditors for 2013 are projected to be $9,152,330. Creditor payments under the Plan in 2013 are projected to be $1,008,743. After all expenses and creditor payments are made, the Debtor projects in 2013 it will have a profit of $1,036,428.

During the first six months of 2014, the final year of the Plan, the Debtor projects $5,475,000 in gross revenue through June. The Debtor's total expenses before payment to creditors are projected to be $4,541,622. Creditor payments under the Plan in 2014 are projected to be $234,800. After all expenses and creditor payments are made, the Debtor projects in 2014 (through June) it will have a profit of $698,578. Furthermore, projections show that Class 3 will be paid back 100% on its claims at the end of April 2014.

## RISK TO CREDITORS

This Disclosure Statement contains statements which look into the future. There is no way to determine the accuracy of these statements. The Debtor has used its best efforts based upon all the information available to the Debtor in making these statements. The Debtor has attempted to be conservative in its analysis. However, the Debtor believes that the Plan as proposed offers the best option for creditors. As explained below in greater detail, the principal alternative to the Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. As indicated in the Debtor's liquidation analysis provided below, liquidation of the Debtor's will result in a minimal recovery for unsecured creditors.

## TAX CONSEQUENCE

The Debtor is not providing tax advice to creditors or interest holders. **U.S. Treasury Regulations require you to be informed that, to the extent this section includes any tax advice, it is not intended or written by the Debtor or its counsel to be used, and cannot be used, for the purpose of avoiding federal tax penalties.** Each party affected by the Plan should consult its own tax advisor for information as to the tax consequences of Plan confirmation. Generally, unsecured creditors should have no tax impact as a result of Plan confirmation. The recovery of each creditor is payment on account of a debt and generally not taxable, unless the creditor wrote off the debt against income in a prior year in which case income may have to be recognized. Interest holders may have very complicated tax effects as a result of Plan confirmation.

## EVENTS DURING THE CHAPTER 11 CASE

### LITIGATION

The Debtor filed a lawsuit in Denver District Court against its licensees in New Mexico, Arizona, and Montana. The first lawsuit was filed against Ace Windows, Inc., a New Mexico corporation ("Ace"), Cono, Inc., an Arizona corporation ("Cono"), and Greg Noel, individually and as an officer and director of both Ace and Cono ("Noel") in the District Court of Denver County, Colorado, under Case No. 09CV2202, entitled, Accent Windows, Inc. vs. Ace Windows, Inc. The basis of the suit was alleged breaches of License Agreements between the Debtor and Ace and the Debtor and Cono, including improper use of Debtor's name and failure to pay the license fee to use the name. The Debtor alleged that Noel was personally liable for damages arising out of the alleged breaches. The Debtor further claimed that it solely owns the tradename "Accent Windows" and that neither Ace nor Cono could use that name or confusingly similar names in their businesses.

Ace, Cono and Noel denied and contested the Debtor's claims and Ace filed a Counterclaim in the Litigation. Ace, Cono and Noel allege that the Debtor breached the License Agreements, interfered with Ace's customer base by sending lien letters to Ace's customers, and threatened to or did interfere with Ace's debranding of "Accent Windows" to "Accent Southwest Windows & Doors," all resulting in recoverable damages/remedies to Ace. Debtor denied and contested Ace, Cono and Noel's claims

26

The Debtor entered into a Settlement Agreement with Ace, Cono and Noel that generally provided as follows:

a. The Parties are granting each other general mutual releases;

b. The terms of the Settlement Agreement are contingent upon Bankruptcy Court approval;

c. Ace shall pay to the Debtor $105,000.00;

d. Ace, Noel, and Cono may use the name of "Accent Southwest Windows and Doors", provided that tradename is not used in the states of Colorado, Utah, Montana, North Dakota, South Dakota, Nebraska, Kansas or Oklahoma;

e. Ace, Cono and Noel shall not use the tradename of "Accent Windows"; and Ace, Cono and Noel shall not object to or take any action to prevent the use by the Debtor, or by any authorized licensee, of the tradename of "Accent Windows;"

f. Within 15 days of Court approval of the Settlement Agreement, Ace, Cono and Noel will remove from its website all references to "Accent Windows" and all materials provided by the Debtor; and Ace, Cono and Noel shall immediately cease using all printed materials or other materials which embodies, displays or exhibits the name of "Accent Windows" and take other action necessary to eliminate any association with "Accent Windows;"

g. The Debtor will not take any targeted action to solicit or market specifically to Ace's or Cono's existing customers. The Debtor or its licensees may perform mass solicitation mailings and other forms of general advertising that is targeted to a broader market than just Ace's or Cono's customers;

h. The Parties agree that Ace, Cono and/or the Debtor shall each be entitled to perform warranty repair work for the Customers without recourse or compensation from the other; and

i. The Parties acknowledge that the Debtor intends to re-establish its own business operations in New Mexico and/or Arizona either directly or through license type arrangements. The Debtor filed a Motion to Approve the Settlement Agreement, which is pending before the Bankruptcy Court.

The Debtor also filed a lawsuit in Denver District Court against Accent Windows and Doors of Montana, a sole proprietorship, and Todd Harkness, doing business as Accent Windows and

Doors of Montana.  The Complaint alleges claims for breach of contract, unjust enrichment and foreclosure of collateral.  This lawsuit is in the early stages of litigation, and the parties are discussing settlement options.  No agreement has been reached as of the date this Disclosure Statement was filed.

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

The Debtor filed several motions to reject executory contracts and unexpired leases that no longer provided a benefit to the estate.  The Debtor obtained orders granting the relief requested. The agreements rejected by the Debtor include: (a) its advertising agreement with Dex Media; (b) its Facility Services Rental Service Agreements with Cintas; (c) its advertising agreement with Yellow Book USA; and (d) its Colorado Springs, Colorado commercial real property lease.

The Debtor entered into agreements to modify certain of its commercial lease agreements to provide a benefit to the estate by modifying the Debtor's lease obligations to more closely parallel the current conditions in the economic downturn, including reductions in the Debtor's monthly lease obligations.   The commercial lease agreements as modified were assumed in the bankruptcy case.

The Debtor's landlord for its manufacturing facility in Westminster, Colorado, John Appelhanz, filed, within approximately one month of the bankruptcy filing, its Motion to Compel Debtor to Perform Certain Lease Obligations.  The Debtor filed an objection, arguing that contrary to the landlord's assertions the Debtor had performed all post-petition lease obligations.  The landlord also sought to compel the Debtor to immediately pay rent for the period from the Petition Date through November 30, 2008 (the "Partial Period Rent").  The Debtor objected on the grounds that case law in this jurisdiction does not entitle the landlord to the requested Partial Period Rent.  This matter was settled through a lease modification and assumption of the lease.

## OPERATIONS

The Debtor have continued to operate its business throughout the Chapter 11 case. Operating statements have been and will continue to be filed with the United States Trustee's Office and the Court on a monthly basis.  A copy of Accent's most recent Balance Sheet from June 2009 is attached as Exhibit C  The Debtor's post-petition Profit and Loss Statements for 2009 are summarized as follows:

28

| MONTH | GROSS OPERATING REVENUE | OPERATING INCOME |
|---|---|---|
| January 2009 | $364,011 | ($131,767) |
| February 2009 | $227,527 | ($75,569) |
| March 2009 | $313,429 | ($18,520) |
| April 2009 | $325,398 | ($14,578) |
| May 2009 | $368,307 | ($49,893) |
| June 2009 | $515,468 | $53,050 |

Despite the losses during the first five months of 2009, the Debtor has made significant improvements in the operations of the Company since the filing of Chapter 11 on November 4, 2008. However, the economic environment has made it extremely difficult for the Debtor to show profitability. As is evident to most, the Debtor's reorganization came during one of the worst economic periods in the history of the United States has ever seen. The immediate months following the commencement of the case were the worst sales months in the history of the Debtor's Company. Even with the economy in a downward spiral, the Debtor was able to keep losses to a bare minimum. Furthermore, in early 2009, the Debtor was forced into litigation with a former licensee in order to collect approximately $105,000. Due to the complexity of the intellectual property issues, and the former licensee's perception that the Debtor would give up due to the pending bankruptcy, this litigation cost the Debtor approximately $50,000. This is an extraordinary expense, and contributed to the losses shown by the Debtor thus far in 2009.

In addition to the litigation, the Debtor is still currently owed approximately $75,000 from its Montana licensee. This money is reflected on the Debtor's A/R ledger. The Debtor's cash position has been negatively impacted by this amount, and the litigation cost to the Debtor in order to collect amounts due. The Debtor sought protection by filing Chapter 11, and thus far, has had to overcome obstacles that are outside of the normal course of its business. These obstacles have contributed to the Debtors inability to show profitability.

Even with struggles with the former licensees, ongoing litigation, and a downward spiraling

29

economy, the Debtor has stayed positive and is doing everything in its power to become profitable. The month of June is a testament to the Debtor's efforts as June is the Debtor's first profitable month in 2009.

The past few months have been an exciting time for the Debtor. The Debtor hired Ken Stanley as the Sales Manager for Accent Windows in early May. Mr. Stanley previously served as a sales manager for the Debtor, and has over 30 years in the home improvement industry. After Mr. Stanley left Accent in 1996, he served as the National Sales Manager for Alcoa for approximately 10 years. Mr. Stanley has proven to be a valuable asset inside the Debtor's organization. He has brought leadership, professionalism, training and marketing ideas to the Debtor's sales organization.

With Mr. Stanley's help, the Debtor has implemented two key sales and marketing programs. The first program is our Neighborhood Development Program ("NDP"). The NDP provides the Debtor's sales representatives the opportunity to "own" a territory in the Denver Metro area. The program provides each sales representative a Marketing Assistant within their respective territories. The Marketing Assistant is responsible for generating leads around each window installation in the territory. This is done by setting up mini trade shows, canvassing, telemarketing, and business to business calling. This program is still in its development stage, but has proven to be successful as reflected in the May and June sales figures.

The second key program is the Debtor's "out of town program". The out of town program began in mid-June and is targeted to hit the rural areas outside of Colorado. The Debtor purchased phone lists for Northeast Colorado, Southwest Nebraska, and Northwest Kansas and began calling these people in order to set up appointments. The phone calls took place for approximately three weeks and the Debtor set 17 appointments which sales reps began pursuing on July 7, 2009. The total cost of the program is $3,500, which includes the cost of the phone list, administrative time, and the out of town expenses. As of July 10, 2009, the Debtor has run eight of the seventeen appointments, and sold over $25,000 through the out of town program. It is expected that the Debtor will sell a minimum of $75,000 through its first out of town program event. This program is and will continue to be a profit center for the Debtor, and the Debtor plans to continue to sell in the rural markets outside of Colorado.

In addition to these programs, Terry Marcovich (President) and Andy Klein (Vice President)

30

have worked hard to develop new business relationships in order to increase revenues. The two executives are working with the Governor's Energy Office to establish Accent as a "qualified party" with the GEO's Weatherization Program. This will result in Accent being awarded local and state contracts for remodel projects that are being funded through the Federal Stimulus package.

Furthermore, the Debtor is working with the State of Colorado to provide energy efficiencies in government buildings. Over the next few years, State buildings, including hospitals, office buildings, and military bases, will be required to conduct energy efficient upgrades with the goal of using 100% renewable energy to power these buildings. The Debtor is strategically aligning itself to be a part of this "smart grid" program.

Another business relationship that the Debtor has consummated is with Radiant Glass Industries ("RGI"). RGI is a local manufacturer of heated glass. The glass unit is powered by a low voltage current. The current flows across the Low E coating on the glass unit and causes friction, which radiates heat from the glass unit. The end result is a heated window that will heat an entire room or house. This product will inevitably replace the standard forced air system in the near future. While this product is a "window" it is actually a heating system. The heated window costs about 1 cent per hour to operate and is much more efficient than a furnace.

The Debtor is in the process of taking the heated window to higher level by changing the power supply to the window from being hardwired to the utility company's grid to using solar power technology to power the unit. The Debtor is working with electrical and solar engineers to develop this new panel to power the heated window and expects final plans to be completed by the end of August 2009. While RGI has the patent for its heated window, the Debtor will apply for intellectual rights with its new design for the solar panel. The Debtor has a representative traveling to Washington DC at the end of July to discuss this new heating system with Congressmen and other government officials. The product has already been installed in numerous homes in Colorado and has reduced energy consumption for homeowners. The Debtor plans on establishing residential, commercial, and government contracts in order to sell this product on the open market. The Debtor is working with Colorado State University professors to further enhance the product. The Debtor expects to see revenue from this product in November 2009 and is confident that this product will be an integral part of the company's future.

The Debtor has positioned itself as the leader in the window industry for the past 27 years. Accent Windows are the most energy efficient windows available to consumers and Colorado is among the top states leading the "new energy economy". The Debtor has positioned itself to take full advantage of the energy movement and will continue to strive to establish new business relationships. While the Debtor has not lost focus of its core business, it is imperative that the company plan and develop new products and relationships in order to be competitive in this ever changing economy.

The month of June is the first profitable month for the Debtor with a $50,000+ net profit. The Debtor's business is subject to seasonality which is one reason why the first two quarters of 2009 were not profitable. The Debtor is now entering its busy season and expects sales and profitability to continue to increase. The Debtor's Plan to repay its creditors can and will be successful.

## OBJECTION TO CLAIMS

The Debtor filed several objections the claims asserted in Proof of Claims filed by certain creditors. The relief requested was granted with respect to the non-responding creditors. One creditor provided documentary evidence to support its claim and the objection was withdrawn. One creditor stipulated to a reduction of its claim.

Of particular import, Richard Roeding filed after the expiration of the bar date his Proof of Claim asserting certain litigation claims as discussed in the "Background and Events Leading to Chapter 11 Filing" section of this Disclosure Statement. The Debtor filed an objection to Roeding's claim on the grounds it was late filed and therefore barred by the statute of limitations. Roeding filed a response asserting that the late filed claim should be allowed on the grounds of excusable neglect. The Debtor filed an objection asserting the excusable neglect standard does not apply to a creditor who had notice of the bar date but failed to timely file its claim. On April 22, 2009, the Bankruptcy Court ruled that Roeding late-filed claim would be deemed as timely filed.

## LIQUIDATION ANALYSIS UNDER CHAPTER 7

The principal alternative to the Debtor's reorganization under Chapter 11 is a conversion of the case to Chapter 7 of the Bankruptcy Code. Chapter 7 requires the liquidation of the Debtor's assets by a Trustee who is appointed by the United States Trustee's office. In a Chapter 7 case, the

Chapter 7 Trustee would take over control of the Debtor's assets. The assets would be liquidated and the proceeds distributed to creditors in the order of their priorities. As detailed in the "Asset" section of this Disclosure Statement, the current value of the Debtor's assets totals $633,325.

The Debtor has estimated the liquidation value of its assets. The liquidation analysis assumes that the amount received from the liquidation of assets would be substantially less than the cost of the hard assets. Based on the liquidation scenario, although the sale proceeds are adequate to pay the secured creditor and most of the obligation to the unsecured priority creditor, there would be no remaining proceeds to satisfy the claims of the unsecured creditors. The unsecured creditors would receive no distribution in the event of a Chapter 7 liquidation. The liquidation analysis is attached hereto as Exhibit D.

Given the alternative under a Chapter 7 scenario, the Debtor's proposed Chapter 11 Plan provides a substantially better alternative for unsecured creditors, and contemplates a distribution of 100% plus interest to Class 3 unsecured creditors to be paid over the projected five years following the Effective Date. It is therefore urged by the Debtor that all creditors vote in favor of the Plan.

DATED: July 17, 2009                        ACCENT WINDOWS, INC.


                                        By: _____
                                              Terry Marcovich, President

33

Kutner Miller Brinen, P.C. ("KMB") has acted as legal counsel to Debtor on bankruptcy matters during the Chapter 11 case.  KMB has prepared this Disclosure Statement with information provided primarily by the Debtor.  The information contained herein has been approved by the Debtor.  KMB has not made any separate independent investigation as to the veracity or accuracy of the statements contained herein.

Debtor- In-Possession:

KUTNER MILLER BRINEN, P.C.

By: _____
      Jeffery S. Brinen
      303 East 17th Avenue, Suite 500
      Denver, CO 80203
      Telephone: (303) 832-2400
      Telecopier: (303) 832-1510
      Email:  jsb@kutnerlaw.com

EXHIBIT A
ACCENT WINDOWS, INC.
Class 3 Claims

| CLAIMANT | SCHEDULED AMOUNT | AMOUNT ASSERTED |
|---|---|---|
| A&M Window Service, Inc. | $58.00 | |
| ACI Distribution | $2,344.69 | |
| Adobe Equipment | $242.19 | |
| Aetna US Heathcare | $855.52 | |
| Airgas Intermountain | $38,948.60 | $38,948.60 |
| All Metal | $9,487.55 | $9,487.55 |
| Alpen Energy Group, LLC | $2,068.00 | |
| Aluminite N.W. | $9,330.00 | $10,925.37 |
| American Express | $12,312.79 | $12,347.79 |
| Andrew Roberts, Inc. | $386.66 | |
| Aquasurtech OEM | $1,666.30 | |
| Arrowood Productions, Inc. | $1,250.00 | $1,250.00 |
| Associtaed Laboratories, Inc. | $800.00 | |
| AT&T | $78.22 | |
| Austin Hardwoods of Denver, Inc. | $10,556.52 | $10,556.52 |
| B&H Sports | $996.04 | |
| Bandimere Speedway | $4,235.25 | |
| Benefactor Funding Corp. | $2,725.82 | |
| BKD, LLP | $16,500.00 | |
| BSI Door Hardware, Inc. | $3,260.37 | |
| Busick Insulated Glass, Inc. | $507.10 | |
| C.R. Laurence Co., Inc. | $35.16 | |
| Cardinal CG | $75,610.66 | $75,610.66 |
| Cbeyond Communication | $5,208.86 | |
| Charles L. Van Linge | $7,000.00 | |
| Cintas Corporation | $118.93 | |
| Cintas Fire Protection | $1,140.75 | |
| CIT Technology Financial Services | $604.38 | |
| Colorado Energy Science Center | $3,000.00 | |
| Comcast Spotlight | $72,229.86 | $99,066.04 |
| Conney Safety Products | $413.53 | |
| Conway Trasportation Services | $3,960.85 | $4,245.94 |
| Customgas Solutions | $69,552.00 | |
| Dencol Supply | $21.91 | |
| Denver Newspaper Agency | $16,580.68 | |
| Desert Fasteners | $2,415.37 | $2,415.37 |
| Dex Media East #6252 | $63,767.20 | |
| Eagle Rock Supply Co. | $4,451.94 | |
| Edgetech I.G., Inc. | $24,070.86 | $2,415.37 |
| Falcon Landing, LLC | | $108,115.99 |
| Fasco Die Cast, Inc. | $800.00 | |
| Fastenal Company | $35.30 | |
| FDR Design, Inc. | $689.65 | |
| Fedex Freight West | $1,797.52 | $2,022.16 |
| Ferrellgas | $298.65 | |
| Franklin Fastener & Supply Co. | $1,185.50 | $1,185.50 |
| G&D, LLC | $6,615.00 | $8,084.25 |
| Garyco Software, Inc. | $8,946.28 | $9,374.78 |
| GED Integrated Solutions | $352.18 | |
| Glass, Inc. | $25,516.52 | |

EXHIBIT A
ACCENT WINDOWS, INC.
Class 3 Claims

| | | |
|---|---|---|
| Green Heart Institute | $199.00 | |
| Hale Security Pet Door | $3,652.00 | $3,652.00 |
| HES-Heritage Electric | $844.38 | |
| Home Depot Credit | $8,319.18 | |
| Hygrade Metal Moulding | $112.00 | |
| Hy-Lite Products, Inc. | $1,052.80 | |
| Idearc Media | $87,538.88 | |
| Internal Revenue Service | | $112,882.02 |
| Jack McQuain | $12,008.35 | |
| John J. Appelhanz | $77,316.00 | $38,668.00 |
| Katzke Paper Co. | $5,977.18 | |
| KCNC TV | $35,077.75 | |
| KMGH-TV | $5,678.00 | $5,678.00 |
| KOAA-TV | $22,997.50 | $22,997.50 |
| Koch's | $660.64 | |
| Krystal Broadcasting, Inc. | $2,084.80 | |
| Lane Supply | $8,351.74 | $8,351.74 |
| LID Landscapes | $2,864.84 | $3,898.08 |
| Lighting Products Company | $617.70 | |
| Lightly Treading, Inc. | $150.00 | |
| Lothar's Industrial Sales, Ltd. | $289.40 | |
| Mandru, William & Linda | $100,000.00 | |
| Manstone, Inc. | $1,125.00 | $1,125.00 |
| Midwest Window & Door Corp. | $10,431.23 | $11,203.26 |
| Milgard Manufacturing | $12,253.59 | |
| Minor & Brown, P.C. | $15,946.61 | |
| Mission Trace Ace Hardware | $100.05 | |
| Mobile Mini, LLC | $266.79 | |
| MTE Technology, Inc. | $1,959.78 | |
| NAMI | $1,522.95 | |
| National Fenestration Rating Counsil | $396.00 | |
| Norm Meier | $339,893.83 | |
| Northside Paint & Decorating | $301.74 | |
| NUDO Products, Inc. | $7,287.66 | |
| Occupational Health Centers | $148.00 | |
| Occuvax | $691.00 | |
| OCE Imagistics, Inc. | $1,461.58 | |
| ODL, Inc. | $1,325.69 | $1,325.69 |
| OREPAC | $11,624.00 | $11,624.00 |
| P.H. Tech Corp. | $768,338.25 | $733,338.25 |
| Penske Truck Leasing | $7,296.33 | |
| PRC-DESOTO International | $25,829.87 | |
| Quinstreet, Inc. | $2,796.00 | $2,796.00 |
| Qwest | $122.14 | |
| RCL Sales, Inc. | $1,488.76 | |
| Roadway Express, Inc. | $431.59 | |
| Round Top Window Products | $272.98 | |
| Rumler Tarbox Lyden Corp. | $15,674.82 | |
| Safety-Kleen Systems, Inc. | $243.44 | |
| Sears Trostel Lumber/Hardwood | $2,750.95 | |
| Shop Tools | $102.84 | |

EXHIBIT A

ACCENT WINDOWS, INC.

Class 3 Claims

| | | |
|---|---|---|
| Smalley & Company | $978.65 | |
| Sommer & Maca | $179.76 | |
| Southwall Technologies | $23,514.24 | $23,514.24 |
| Sprint | $2,596.32 | |
| Staples Business Advantage | $8,710.07 | |
| Ted Lansing Corp | $303.73 | |
| The Publishing House | $4,700.00 | $4,700.00 |
| The RPA Group, Inc. | $234.07 | |
| Tim and Sherry Marcovich[1] | | |
| Truseal Technologies | | $17,403.69 |
| Truth Hardware | $5,326.28 | $5,712.19 |
| United Parcel Service | $59.81 | |
| Urban Machinery, Inc. | $622.65 | |
| US Bank | $45,836.63 | $46,090.63 |
| US Building Supply | $58,145.02 | $58,145.02 |
| Vexor Custom Woodworking Tools | $538.00 | |
| Vitro America | $2,329.01 | |
| WACO Scaffolding & Equipment | $675.93 | |
| Waste Management of Denver | $2,233.93 | $4,579.66 |
| Westminster | $5,765.72 | $5,770.72 |
| Whisler Bearing Co. | $1,206.40 | |
| Wright Express | $10,995.21 | |
| Xcel Energy | $11,956.83 | |
| XO Communications, LLC | $331.81 | |
| Yellow Book West | $30,000.00 | $23,442.75 |
| Zep Manufacturing | $501.87 | |
| | | |
| **TOTAL** | **$2,340,646.71** | **$1,542,950.33** |
| | | |
| **TOAL CLAIMS ASSERTED** | | **$2,670,488.46** |

1. Tim and Sherry Marcovich hold a claim in the amount of $1,129,480.62, but pursuan to the Plan they will not participate in any distribution to unsecured creditors.

# ACCENT WINDOWS, INC. CHAPTER 11 PROFORMA
## 5 MONTH CASHFLOW DETAIL 2009

| | August | September | October | November | December | TOTALS |
|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | |
| LICENSEE SALES | 75,000 | 75,000 | 75,000 | 100,000 | 75,000 | 400,000 |
| WHOLESALE SALES | 17,500 | 17,500 | 20,000 | 20,000 | 15,000 | 90,000 |
| COMMERCIAL SALES | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 100,000 |
| RETAIL INSTALLS | 400,000 | 430,000 | 440,000 | 430,000 | 400,000 | 2,100,000 |
| TOTAL REVENUE | 512,500 | 542,500 | 555,000 | 570,000 | 510,000 | 2,690,000 |
| | | | | | | |
| **EXPENSES (Manufacturing)** | | | | | | |
| MANUFACTURING COSTS | 138,375 | 146,475 | 149,850 | 153,900 | 137,700 | 726,300 |
| CONTRACT LABOR WINDOWS | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| TOTAL EXPENSES/MANUFACTURING | 140,375 | 148,475 | 151,850 | 155,900 | 139,700 | 736,300 |
| GROSS MARGIN | 372,125 | 394,025 | 403,150 | 414,100 | 370,300 | 1,953,700 |
| | | | | | | |
| **WAGES & PAYROLL EXPENSE** | | | | | | |
| Installation | 42,000 | 45,000 | 46,000 | 45,000 | 42,000 | 220,000 |
| Service | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 37,500 |
| Sales | 35,000 | 37,400 | 38,400 | 37,600 | 34,800 | 183,200 |
| Marketing | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 45,000 |
| Accounting | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 30,000 |
| General Administration | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| Manufacturing | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 150,000 |
| R&D/Facilities/Misc | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 50,000 |
| Shipping/Receiving/Warehouse | 5,600 | 5,600 | 5,600 | 5,600 | 5,600 | 28,000 |
| Production | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 18,000 |
| Officer Wages | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 185,000 |
| HEALTH INSURANCE | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| PAYROLL TAXES | 14,589 | 15,002 | 15,155 | 15,017 | 14,573 | 74,335 |
| TOTAL WAGE EXPENSE | 210,289 | 216,102 | 218,255 | 216,317 | 210,073 | 1,071,035 |
| | | | | | | |
| **SELLING/ADMIN. EXPENSES** | | | | | | |
| ADVERTISING/TV & RADIO | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 60,000 |
| ADV/PUBLISHED/YELLOW PAGES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| ADV/PROMO MISC. | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| HOME SHOW FEES & MISC.EXP. | 1,100 | 1,100 | 1,100 | 1,100 | 1,100 | 5,500 |
| ACCOUNTANT/ATTORNEYS | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 25,000 |
| AUTO/TRAVEL MFG | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| AUTO/INST/VANS | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| CHARITABLE DONATIONS | 200 | 200 | 200 | 200 | 200 | 1,000 |
| DUES/SUBSCRIPTIONS | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 6,000 |
| EMPLOYEE EDUCATIONS/SAFETY | 250 | 250 | 250 | 250 | 250 | 1,250 |
| ENTERTAINMENT/MFG | 300 | 300 | 300 | 300 | 300 | 1,500 |
| ENTERTAINMENT RETAIL | 400 | 400 | 400 | 400 | 400 | 2,000 |
| EQUIPMENT RENTAL | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 |
| FEES/PERMITS/LICENSES/MISC.TAX | 7,688 | 8,138 | 8,325 | 8,550 | 7,650 | 40,350 |
| FINANCE & VISA FEES | 4,000 | 4,300 | 4,400 | 4,300 | 4,000 | 21,000 |
| FREIGHT IN PURCHASE | 2,563 | 2,713 | 2,775 | 2,850 | 2,550 | 13,450 |
| INSURANCE BUSINESS | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 50,000 |
| OFFICE SUPPLIES/COMPUTER/GARY/CO | 3,588 | 3,798 | 3,885 | 3,990 | 3,570 | 18,830 |
| RENT PECOS | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 125,000 |
| RENT/SHOWROOMS (NEW MEXICO) | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 12,500 |
| RENT/SHOWROOMS (HIGHLANDS RANCH) | 4,200 | 4,200 | 4,200 | 4,200 | 4,200 | 21,000 |
| NEW MEXICO EXPENSE | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 10,000 |
| REPAIR/SHOP/TOOLS/TRASH | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 17,500 |
| UTILITIES | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 37,500 |
| TELEPHONE | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 13,500 |
| TOTAL SELLING/ADMIN. EXPENSES | 101,688 | 102,798 | 103,235 | 103,540 | 101,620 | 512,880 |
| | | | | | | |
| **OTHER EXPENSES** | | | | | | |
| IRS PAYMENT | 9,500 | 9,500 | 9,500 | 9,500 | 9,500 | 47,500 |
| URBAN MACHINERY PAYMENT | 995 | 995 | 995 | 995 | 995 | 4,973 |
| CLASS 3 CREDITOR PAYMENT @ % OF GROSS REVENUE | 12,813 | 13,563 | 15,263 | 15,675 | 14,025 | 71,338 |
| INTEREST TO CLASS 3 @ ANNUAL 3.25% | 0 | 14,465 | 0 | 0 | 21,483 | 35,949 |
| CHAPTER 11 QUARTERLY FEES | 0 | 0 | 0 | 0 | 0 | 0 |
| TOTAL OTHER EXPENSES | 23,307 | 38,522 | 25,757 | 26,170 | 46,003 | 159,759 |
| | | | | | | |
| TOTAL MONTHLY EXPENSES | 335,283 | 357,421 | 347,247 | 346,027 | 357,696 | 1,743,674 |
| | | | | | | |
| NET INCOME TOTAL | $ 36,842 | $ 36,604 | $ 55,903 | $ 68,073 | $ 12,604 | $ 210,026 |

Exhibit B

## ACCENT WINDOWS, INC. CHAPTER 11 PROFORMA
### 12 MONTH CASHFLOW DETAIL 2010

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | | |
| LICENSEE SALES | 50,000 | 60,000 | 60,000 | 75,000 | 75,000 | 75,000 | 50,000 | 75,000 | 100,000 | 150,000 | 150,000 | 100,000 | 1,020,000 |
| WHOLESALE SALES | 10,000 | 10,000 | 10,000 | 10,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 20,000 | 20,000 | 20,000 | 175,000 |
| COMMERCIAL SALES | 25,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 245,000 |
| RETAIL | 400,000 | 415,000 | 425,000 | 425,000 | 450,000 | 475,000 | 450,000 | 480,000 | 475,000 | 475,000 | 425,000 | 400,000 | 5,295,000 |
| **TOTAL REVENUE** | 485,000 | 505,000 | 515,000 | 530,000 | 560,000 | 585,000 | 535,000 | 590,000 | 610,000 | 665,000 | 615,000 | 540,000 | 6,735,000 |
| **EXPENSES (Manufacturing)** | | | | | | | | | | | | | |
| MANUFACTURING COSTS | 130,950 | 136,350 | 139,050 | 143,100 | 151,200 | 157,950 | 144,450 | 159,300 | 164,700 | 179,550 | 166,050 | 145,800 | 1,818,450 |
| CONTRACT LABOR WINDOWS | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| **TOTAL EXPENSES/MANUFACTURING** | 132,950 | 138,350 | 141,050 | 145,100 | 153,200 | 159,950 | 146,450 | 161,300 | 166,700 | 181,550 | 168,050 | 147,800 | 1,842,450 |
| **GROSS MARGIN** | 352,050 | 366,650 | 373,950 | 384,900 | 406,800 | 425,050 | 388,550 | 428,700 | 443,300 | 483,450 | 446,950 | 392,200 | 4,892,550 |
| **WAGES & PAYROLL EXPENSE** | | | | | | | | | | | | | |
| Installation | 42,500 | 43,500 | 44,500 | 44,500 | 47,000 | 49,500 | 47,000 | 50,000 | 49,500 | 49,500 | 44,500 | 42,000 | 554,000 |
| Service | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Sales | 34,800 | 35,600 | 36,400 | 36,400 | 38,800 | 40,800 | 38,800 | 41,200 | 40,800 | 41,000 | 37,000 | 35,000 | 457,200 |
| Marketing | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Accounting | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 72,000 |
| General Administration | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| Manufacturing | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 360,000 |
| R&D/Facilities/Misc | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| Shipping/Receiving/Warehouse | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 78,000 |
| Production | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 72,000 |
| Office Wages | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 444,000 |
| HEALTH INSURANCE | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| PAYROLL TAXES | 15,132 | 15,289 | 15,407 | 15,407 | 15,782 | 15,782 | 15,782 | 16,195 | 16,126 | 16,507 | 15,608 | 15,524 | 187,176 |
| **TOTAL WAGE EXPENSE** | 222,932 | 224,969 | 226,807 | 226,807 | 232,082 | 236,928 | 232,082 | 237,895 | 236,928 | 237,357 | 227,668 | 222,824 | 2,765,176 |
| **SELLING/ADMIN. EXPENSES** | | | | | | | | | | | | | |
| ADVERTISING/TV & RADIO | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 14,000 | 168,000 |
| ADV/PUBLISHED/YELLOW PAGES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| ADV/PROMO MISC. | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| HOMESHOW FEES & MISC.EXP | 6,500 | | | | | | | | | | | | 15,500 |
| ACCOUNTANT/CPA | | | | | | | | | | | | | 15,500 |
| AUTO/CONTAINERS/OWNER'S | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| AUTO/TRAVEL MFG | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| AUTOINST/VANS | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| CHARITABLE DONATIONS | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| DUES/SUBSCRIPTIONS | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| EMPLOYEE/EDUCATION/SAFETY | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| ENTERTAINMENT/MFG | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| ENTERTAINMENT RETAIL | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| EQUIPMENT RENTAL | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| FEES/PERMITS/LICENSES/MISC TAX | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| FINANCE & VISA FEES | 7,275 | 7,575 | 7,725 | 7,950 | 8,400 | 8,775 | 8,025 | 8,850 | 9,150 | 9,975 | 9,225 | 8,100 | 101,025 |
| FREIGHT IN PURCHASE | | | | | | | | | | | | | 52,950 |
| INSURANCE BUSINESS | 995 | | | | | | | | | | | | 33,675 |
| OFFICE SUPPLIES/COMPUTER/GARYCO | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| RENT FREIGHT | 3,395 | | | | | | | | | | | | 47,145 |
| RENT/SHOWROOMS (NEW MEXICO) | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 23,000 | 276,000 |
| RENT/SHOWROOMS (HIGHLANDS RANCH) | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 78,000 |
| NEW MEXICO EXPENSE | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| REPAIRS/SHOP/TOOLS/TRASH | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| UTILITIES | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 8,500 | 102,000 |
| TELEPHONE | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 32,400 |
| **TOTAL SELLING/ADMIN. EXPENSES** | 111,645 | 105,835 | 106,205 | 106,610 | 108,770 | 109,695 | 108,095 | 109,880 | 110,370 | 111,865 | 110,005 | 107,730 | 1,306,895 |
| **OTHER EXPENSES** | | | | | | | | | | | | | |
| CAPITAL EXPENDITURE PAYMENT | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| IRS PAYMENT | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 11,500 | 138,000 |
| URBAN MACHINERY PAYMENT | 995 | 995 | 995 | 995 | 995 | 995 | | | | | | | 5,969 |
| CLASS 3 CREDITOR PAYMENT @ % OF GROSS REVENUE | 12,125 | 12,625 | 12,875 | 14,575 | 15,200 | 16,088 | 14,713 | 16,225 | 16,775 | 19,950 | 18,450 | 16,200 | 185,801 |
| INTEREST TO CLASS 3 @ ANNUAL 3.25% | | | 21,118 | | | 20,812 | | | 20,438 | | | 20,050 | 82,419 |
| **TOTAL OTHER EXPENSES** | 29,620 | 30,120 | 51,488 | 32,070 | 32,695 | 54,395 | 31,213 | 32,725 | 53,713 | 36,450 | 34,950 | 52,750 | 472,388 |
| **TOTAL MONTHLY EXPENSES** | 364,196 | 360,824 | 384,500 | 365,487 | 373,747 | 401,016 | 371,389 | 380,500 | 401,009 | 385,662 | 372,623 | 385,305 | 4,544,259 |
| **NET INCOME TOTAL** | $ (12,146.37) | $ 5,825.93 | $ (10,549.87) | $ 19,413.23 | $ 33,053.05 | $ 24,033.91 | $ 17,160.55 | $ 48,199.95 | $ 42,290.66 | $ 97,788.20 | $ 74,326.70 | $ 6,895.46 | $ 348,291.42 |

## ACCENT WINDOWS, INC. CHAPTER 11 PROFORMA
### 12 MONTH CASHFLOW DETAIL 2011

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | | |
| LICENSEE SALES | 75,000 | 100,000 | 125,000 | 125,000 | 150,000 | 125,000 | 100,000 | 125,000 | 150,000 | 175,000 | 200,000 | 125,000 | 1,575,000 |
| WHOLESALE SALES | 15,000 | 15,000 | 15,000 | 15,000 | 20,000 | 20,000 | 20,000 | 20,000 | 22,500 | 22,500 | 22,500 | 20,000 | 227,500 |
| COMMERCIAL SALES | 25,000 | 25,000 | 25,000 | 25,000 | 30,000 | 25,000 | 30,000 | 30,000 | 35,000 | 35,000 | 35,000 | 20,000 | 340,000 |
| RETAIL SALES | 475,000 | 500,000 | 650,000 | 560,000 | 640,000 | 570,000 | 575,000 | 650,000 | 675,000 | 725,000 | 800,000 | 550,000 | 7,370,000 |
| **TOTAL REVENUE** | 590,000 | 640,000 | 815,000 | 745,000 | 840,000 | 725,000 | 725,000 | 825,000 | 882,500 | 957,500 | 1,052,500 | 715,000 | 9,512,500 |
| **EXPENSES (Manufacturing)** | | | | | | | | | | | | | |
| MANUFACTURING COST | | | | | | | | | | | | | |
| CONTRACT LABOR WINDOWS | 159,300 | 172,800 | 220,050 | 201,150 | 226,800 | 195,750 | 195,750 | 222,750 | 238,275 | 258,525 | 284,175 | 193,050 | 2,568,375 |
| | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| **TOTAL EXPENSES/MANUFACTURING** | 161,300 | 174,800 | 222,050 | 203,150 | 228,800 | 197,750 | 197,750 | 224,750 | 240,275 | 260,525 | 286,175 | 195,050 | 2,592,375 |
| **GROSS MARGIN** | 428,700 | 465,200 | 592,950 | 541,850 | 611,200 | 527,250 | 527,250 | 600,250 | 642,225 | 696,975 | 766,325 | 519,950 | 6,920,125 |
| **WAGES & PAYROLL EXPENSE** | | | | | | | | | | | | | |
| Installation | 50,000 | 52,500 | 67,500 | 60,500 | 67,000 | 58,000 | 60,500 | 68,000 | 71,000 | 76,000 | 83,000 | 57,000 | 771,000 |
| Service | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Sales | 41,000 | 43,000 | 55,200 | 49,600 | 55,200 | 48,400 | 50,000 | 56,000 | 58,600 | 62,600 | 68,200 | 47,200 | 635,000 |
| Marketing | 8,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Accounting | 8,000 | 6,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 |
| General Administration | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 72,000 |
| Marketing | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 60,000 | 720,000 |
| R&D/Facilities/Misc | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Shipping/Receiving/Warehouse | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Production | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Office Wages | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 444,000 |
| HEALTH INSURANCE | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 240,000 |
| PAYROLL TAXES | 19,102 | 19,446 | 21,512 | 20,534 | 21,474 | 21,592 | 20,234 | 21,611 | 22,040 | 21,728 | 23,692 | 20,097 | 253,062 |
| **TOTAL WAGE EXPENSE** | 288,802 | 293,646 | 322,712 | 309,146 | 322,174 | 309,780 | 304,734 | 324,111 | 330,140 | 339,628 | 353,392 | 302,797 | 3,801,062 |
| **SELLING/ADMIN. EXPENSES** | | | | | | | | | | | | | |
| ADVERTISING/TV & RADIO | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 16,000 | 192,000 |
| ADV PUBLISHED/YELLOW PAGES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| ADV PUBLISHED/MISC | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| HOMESHOW FEES & MISC EXP. | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,100 | 1,100 | 12,000 |
| ACCOUNTANTS/ATTORNEY'S | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| AUTO/TRAVEL MFG | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 48,000 |
| AUTO/TRAVEL | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| CHARITABLE DONATIONS | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| DUES/SUBSCRIPTIONS | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| EMPLOYEE EDUCATION/SAFETY | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| ENTERTAINMENT MFG | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| ENTERTAINMENT RETAIL | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| EQUIPMENT RENTAL | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| FEES/PERMITS/LICENSES/MISC TAX | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| FINANCE & VISA FEES | 8,850 | 9,600 | 12,225 | 11,175 | 12,600 | 10,876 | 10,875 | 12,375 | 13,236 | 14,363 | 15,788 | 10,725 | 142,688 |
| FREIGHT IN PURCHASE | 6,500 | 6,500 | 6,500 | 5,600 | 6,400 | 6,400 | 5,750 | 6,500 | 6,750 | 7,250 | 8,000 | 5,500 | 73,700 |
| INSURANCE BUSINESS | 3,200 | 3,200 | 4,075 | 3,728 | 4,200 | 3,625 | 3,625 | 3,625 | 4,413 | 4,788 | 5,263 | 3,575 | 47,563 |
| OFFICE SUPPLIES/COMPUTER/GARYCO | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| RENT PECOS | 4,130 | 4,480 | 5,705 | 5,215 | 5,880 | 5,075 | 5,075 | 5,775 | 6,178 | 6,703 | 7,368 | 5,005 | 66,598 |
| RENT/SHOWROOMS (NEW MEXICO) | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 24,500 | 294,000 |
| RENT/SHOWROOMS (HIGHLANDS RANCH) | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 33,000 |
| NEW MEXICO EXPENSE | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| REPAIRS/SHOP/TOOLS/TRASH | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| UTILITIES | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| TELEPHONE | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 32,640 |
| **TOTAL SELLING/ADMIN. EXPENSES** | 122,480 | 117,580 | 123,805 | 121,215 | 125,480 | 101,476 | 121,725 | 125,175 | 126,976 | 129,503 | 132,818 | 121,205 | 1,469,438 |
| **OTHER EXPENSES** | | | | | | | | | | | | | |
| CAPITAL EXPENDITURE PAYMENT | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| IRS PAYMENT | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| CLASS 3 CREDITOR PAYMENT @ % OF GROSS REVENUE | 17,700 | 19,200 | 44,057 | 48,425 | 54,600 | 47,125 | 47,125 | 53,625 | 57,363 | 71,813 | 78,938 | 53,625 | 573,988 |
| INTEREST TO CLASS 3 @ ANNUAL 3.25% | | | | | | | 3,988 | | 17,888 | | | 16,604 | 73,207 |
| **TOTAL OTHER EXPENSES** | 34,700 | 36,200 | 61,057 | 65,425 | 71,600 | 64,125 | 64,125 | 70,625 | 92,251 | 88,813 | 95,938 | 87,229 | 851,195 |
| **TOTAL MONTHLY EXPENSES** | 445,982 | 447,426 | 507,574 | 495,788 | 519,254 | 509,443 | 495,429 | 519,911 | 549,366 | 558,143 | 582,147 | 511,230 | 6,141,694 |
| **NET INCOME TOTAL** | $(17,282.05) | $17,773.70 | $86,376.35 | $46,062.10 | $91,946.45 | $17,807.37 | $31,821.50 | $80,338.75 | $92,856.94 | $138,831.85 | $184,177.95 | $8,719.70 | $778,430.62 |

## ACCENT WINDOWS, INC. CHAPTER 11 PROFORMA
## 12 MONTH CASHFLOW DETAIL 2012

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTALS |
|---|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|--:|
| **REVENUE** | | | | | | | | | | | | | |
| LICENSEE SALES | 125,000 | 150,000 | 175,000 | 125,000 | 150,000 | 100,000 | 100,000 | 175,000 | 200,000 | 225,000 | 250,000 | 200,000 | 1,975,000 |
| WHOLESALE SALES | 15,000 | 15,000 | 15,000 | 15,000 | 20,000 | 20,000 | 20,000 | 20,000 | 22,500 | 22,500 | 22,500 | 20,000 | 227,500 |
| COMMERCIAL SALES | 25,000 | 25,000 | 25,000 | 25,000 | 30,000 | 30,000 | 30,000 | 30,000 | 35,000 | 35,000 | 30,000 | 20,000 | 340,000 |
| RETAIL SALES | 550,000 | 580,000 | 750,000 | 600,000 | 650,000 | 675,000 | 600,000 | 675,000 | 650,000 | 750,000 | 800,000 | 625,000 | 7,905,000 |
| **TOTAL REVENUE** | 715,000 | 770,000 | 965,000 | 765,000 | 850,000 | 825,000 | 750,000 | 900,000 | 907,500 | 1,032,500 | 1,102,500 | 865,000 | 10,447,500 |
| **EXPENSES (Manufacturing)** | | | | | | | | | | | | | |
| MANUFACTURING COSTS | 193,050 | 207,900 | 260,550 | 206,550 | 229,500 | 222,750 | 202,500 | 243,000 | 245,025 | 278,775 | 297,675 | 233,550 | 2,820,825 |
| LICENSE MATERIALS-WINDOWS | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| **TOTAL EXPENSES/MANUFACTURING** | 195,050 | 209,900 | 262,550 | 208,550 | 231,500 | 224,750 | 204,500 | 245,000 | 247,025 | 280,775 | 299,675 | 235,550 | 2,844,825 |
| **GROSS MARGIN** | 519,950 | 560,100 | 702,450 | 556,450 | 618,500 | 600,250 | 545,500 | 655,000 | 660,475 | 751,725 | 802,825 | 629,450 | 7,602,675 |
| **WAGES & PAYROLL EXPENSE** | | | | | | | | | | | | | |
| Installation | 57,500 | 60,500 | 77,500 | 62,500 | 68,000 | 70,500 | 63,000 | 70,500 | 68,500 | 78,500 | 83,000 | 64,500 | 824,500 |
| Service | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Sales | 47,200 | 49,600 | 63,200 | 51,200 | 56,000 | 58,000 | 52,000 | 58,000 | 56,600 | 64,600 | 68,200 | 53,200 | 677,800 |
| Marketing | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Accounting | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| General Administration | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 6,500 | 78,000 |
| Manufacturing | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 840,000 |
| R&D/Facilities/Misc | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 180,000 |
| Shipping/Receiving/Warehouse | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Production | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Officer Wages | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 444,000 |
| HEALTH INSURANCE | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 360,000 |
| PAYROLL TAXES | 21,015 | 21,428 | 23,789 | 21,703 | 22,491 | 22,835 | 21,335 | 22,835 | 22,575 | 23,952 | 24,572 | 22,376 | 270,906 |
| **TOTAL WAGE EXPENSE** | 325,715 | 331,528 | 364,489 | 335,403 | 346,491 | 351,335 | 336,335 | 351,335 | 347,675 | 367,052 | 375,772 | 339,709 | 4,173,206 |
| **SELLING/ADMIN. EXPENSES** | | | | | | | | | | | | | |
| ADVERTISING/TV & RADIO | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 216,000 |
| ADV/PUBLISHED/YELLOW PAGES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| ADV/PROMO/MISC | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| HOME/SHOW FEES & MISC EXP. | | | | 5,000 | | 5,000 | | | | | | | 14,500 |
| ACCOUNTANTS/ATTORNEY'S | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| AUTO/TRAVEL MFG | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 4,500 | 54,000 |
| AUTO/TRAVEL/SALES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| CHARITABLE DONATIONS | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,400 |
| DUES/SUBSCRIPTIONS | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| EMPLOYEE/EDUCATION/SAFETY | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| ENTERTAINMENT/MFG | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| ENTERTAINMENT RETAIL | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| EQUIPMENT RENTAL | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| FEES/PERMITS/LICENSES/MISC TAX | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| FINANCE & VISA FEES | 10,725 | 11,550 | 14,475 | 11,475 | 12,750 | 12,375 | 11,250 | 13,500 | 13,613 | 15,488 | 16,538 | 12,975 | 156,713 |
| FREIGHT IN PURCHASE | 5,500 | 5,860 | 7,500 | 5,820 | 6,500 | 6,750 | 5,750 | 6,750 | 6,538 | 7,500 | 8,006 | 6,250 | 79,050 |
| INSURANCE BUSINESS | 3,875 | 3,825 | 3,825 | 3,825 | 4,125 | 4,125 | 3,750 | 4,500 | 4,538 | 5,163 | 5,513 | 4,325 | 52,238 |
| OFFICE SUPPLIES/COMPUTER/GRAYCO | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 73,133 |
| RENT PEO/CS | 5,005 | 5,386 | 6,755 | 5,356 | 5,950 | 5,775 | 5,250 | 6,300 | 6,353 | 7,228 | 7,718 | 6,055 | 73,133 |
| RENT/SHOWROOMS (NEW MEXICO) | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 300,000 |
| RENT/SHOWROOMS (HIGHLANDS RANCH) | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 12,000 | 144,000 |
| NEW MEXICO SUPPLIES | 2,900 | 2,900 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 7,200 | 86,400 |
| REPAIR/SHOP/TOOLS/TRASH | 7,200 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| UTILITIES | 3,000 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 36,000 |
| TELEPHONE | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 42,000 |
| TELEPHONE | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 32,400 |
| **TOTAL SELLING/ADMIN. EXPENSES** | 130,456 | 125,740 | 132,705 | 125,805 | 129,600 | 129,175 | 128,400 | 131,200 | 131,183 | 135,528 | 137,918 | 128,755 | 1,565,433 |
| **OTHER EXPENSES** | | | | | | | | | | | | | |
| CAPITAL EXPENDITURE PAYMENT | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| IRS PAYMENT | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 150,000 |
| CLASS 3 CREDITOR PAYMENT @ % OF GROSS REVENUE | 46,475 | 62,325 | 62,525 | 49,725 | 55,250 | 53,645 | 63,000 | 63,025 | 63,925 | 82,600 | 88,200 | 69,200 | 736,875 |
| INTEREST TO CLASS 3 @ ANNUAL 3.25% | | | 12,981 | | | 13,859 | | | 12,361 | | | 10,906 | 51,859 |
| **TOTAL OTHER EXPENSES** | 68,875 | 72,550 | 100,166 | 72,225 | 77,750 | 89,774 | 75,000 | 85,500 | 96,386 | 105,100 | 110,700 | 102,606 | 1,058,734 |
| **TOTAL MONTHLY EXPENSES** | 525,145 | 529,818 | 597,342 | 533,433 | 553,841 | 570,285 | 538,203 | 568,035 | 577,213 | 607,680 | 624,389 | 572,070 | 6,797,453 |
| **NET INCOME TOTAL** | $ (5,195) | $ 30,282 | $ 105,108 | $ 23,017 | $ 64,659 | $ 29,965 | $ 7,298 | $ 66,965 | $ 83,262 | $ 144,045 | $ 178,436 | $ 57,380 | $ 805,222 |

## ACCENT WINDOWS, INC. CHAPTER 11 PROFORMA
### 12 MONTH CASHFLOW DETAIL 2013

| | January | February | March | April | May | June | July | August | September | October | November | December | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | | | | | | | |
| LICENSEE SALES | 150,000 | 150,000 | 200,000 | 225,000 | 225,000 | 175,000 | 150,000 | 225,000 | 250,000 | 360,000 | 325,000 | 225,000 | 2,620,000 |
| WHOLESALE SALES | 15,000 | 15,000 | 15,000 | 15,000 | 25,000 | 20,000 | 20,000 | 20,000 | 22,500 | 22,500 | 22,500 | 20,000 | 227,500 |
| COMMERCIAL SALES | 25,000 | 25,000 | 25,000 | 25,000 | 30,000 | 30,000 | 30,000 | 30,000 | 35,000 | 35,000 | 30,000 | 20,000 | 340,000 |
| RETAIL SALES | 600,000 | 625,000 | 650,000 | 700,000 | 625,000 | 650,000 | 625,000 | 650,000 | 750,000 | 800,000 | 775,000 | 700,000 | 8,150,000 |
| **TOTAL REVENUE** | 790,000 | 815,000 | 890,000 | 966,000 | 900,000 | 875,000 | 825,000 | 925,000 | 1,057,500 | 1,157,500 | 1,152,500 | 965,000 | 11,317,500 |
| **EXPENSES (Manufacturing)** | | | | | | | | | | | | | |
| MANUFACTURING COST-FUTURE | 213,300 | 220,050 | 240,300 | 260,550 | 243,000 | 236,250 | 222,750 | 249,750 | 285,525 | 312,525 | 311,175 | 260,550 | 3,055,725 |
| CONTRACT LABOR WINDOWS | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 24,000 |
| **TOTAL EXPENSES-MANUFACTURING** | 215,300 | 222,050 | 242,300 | 262,550 | 245,000 | 238,250 | 224,750 | 251,750 | 287,525 | 314,525 | 313,175 | 262,550 | 3,079,725 |
| **GROSS MARGIN** | 574,700 | 592,950 | 647,700 | 702,450 | 655,000 | 636,750 | 600,250 | 673,250 | 769,975 | 842,975 | 839,325 | 702,450 | 8,237,775 |
| **WAGES & PAYROLL EXPENSE** | | | | | | | | | | | | | |
| Installation | 62,500 | 65,000 | 67,500 | 72,500 | 65,500 | 68,000 | 65,500 | 68,000 | 78,500 | 83,500 | 80,500 | 72,000 | 849,000 |
| Service | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Sales | 51,200 | 53,200 | 55,200 | 59,200 | 54,000 | 56,000 | 54,000 | 56,000 | 64,800 | 68,000 | 66,200 | 59,200 | 697,400 |
| Marketing | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| Accounting | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| General Administration | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 84,000 |
| Manufacturing | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 840,000 |
| R&D/Facilities/Misc | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 198,000 |
| Shipping/Receiving/Warehouse | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 96,000 |
| Production | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| Officer Wages | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 444,000 |
| HEALTH INSURANCE | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 360,000 |
| PAYROLL TAXES | 22,000 | 22,353 | 22,686 | 23,386 | 22,453 | 22,797 | 22,453 | 22,797 | 24,947 | 24,947 | 24,334 | 23,346 | 277,552 |
| **TOTAL WAGE EXPENSE** | 338,709 | 344,553 | 349,398 | 359,096 | 345,953 | 350,797 | 345,953 | 350,797 | 371,358 | 381,047 | 375,234 | 358,548 | 4,272,452 |
| **SELLING/ADMIN EXPENSES** | | | | | | | | | | | | | |
| ADVERTISING/TV & RADIO | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 300,000 |
| ADV/PUBLISHED/YELLOW PAGES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| ADV/PROMO/MISC | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| HOMESHOW FEES & MISC EXP | 6,500 | | | | 5,000 | | | 5,000 | | | | | 14,500 |
| ACCOUNTANTS/ATTORNEYS | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 60,000 |
| AUTO/TRAVEL MFG | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 66,000 |
| AUTO/INSTALLVANS | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| CHARITABLE DONATIONS | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| DUES/SUBSCRIPTIONS | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| EMPLOYEE/EDUCATION/SAFETY | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| ENTERTAINMENT | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 300 | 300 | 300 | 300 | 3,600 |
| ENTERTAINMENT RETAIL | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 400 | 400 | 400 | 3,600 |
| EQUIPMENT RENTAL | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 4,800 |
| FEES/PERMITS/LICENSES/MISC TAX | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| FINANCE & VISA FEES | 11,850 | 12,225 | 13,350 | 14,475 | 13,500 | 13,125 | 12,375 | 13,875 | 15,863 | 17,363 | 17,288 | 14,475 | 169,763 |
| FREIGHT IN PURCHASE | 6,250 | 6,250 | 6,500 | 7,000 | 6,250 | 6,500 | 6,250 | 6,500 | 7,500 | 8,000 | 7,750 | 7,000 | 81,500 |
| INSURANCE BUSINESS | 3,950 | 4,750 | 4,450 | 4,625 | 4,375 | 4,375 | 4,375 | 4,625 | 5,288 | 5,788 | 5,763 | 4,825 | 56,588 |
| OFFICE SUPPLIES/COMPUTER/GARY&CO | 6,530 | 5,705 | 6,230 | 6,755 | 6,300 | 6,125 | 5,775 | 6,475 | 7,403 | 8,103 | 8,068 | 6,755 | 79,223 |
| RENT PECOS | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 312,000 |
| RENT/SHOWROOMS (NEW MEXICO) | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| RENT/SHOWROOMS (HIGHLANDS RANCH) | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 90,000 |
| NEW MEXICO EXPENSE | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 36,000 |
| REPAIR/SHOP/TOOLS/TRASH | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| UTILITIES | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 108,000 |
| TELEPHONE | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 32,400 |
| **TOTAL SELLING/ADMIN EXPENSES** | 150,380 | 144,605 | 147,060 | 149,605 | 148,100 | 147,675 | 146,075 | 149,026 | 153,603 | 156,603 | 156,416 | 150,605 | 1,800,175 |
| **OTHER EXPENSES** | | | | | | | | | | | | | |
| CAPITAL EXPENDITURE PAYMENT | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| IRS PAYMENT | 16,163 | 16,163 | 16,163 | 16,163 | 16,163 | 16,163 | 16,163 | 16,163 | 16,163 | 16,163 | | | 161,630 |
| CLASS 3 CREDITOR PAYMENT @ % OF GROSS REVENUE | 51,350 | 52,975 | 57,850 | 72,375 | 67,500 | 65,625 | 61,875 | 69,313 | 79,313 | 98,388 | 97,963 | 82,025 | 856,613 |
| INTEREST TO CLASS 3 @ ANNUAL 3.25% | | | 8,956 | | | 7,638 | | | 5,969 | | | 4,258 | 26,741 |
| **TOTAL OTHER EXPENSES** | 77,513 | 79,138 | 92,969 | 98,538 | 93,663 | 99,426 | 88,038 | 95,536 | 111,444 | 124,551 | 107,963 | 96,283 | 1,165,064 |
| **TOTAL MONTHLY EXPENSES** | 567,002 | 568,496 | 589,447 | 607,229 | 587,716 | 597,698 | 580,066 | 595,360 | 636,405 | 662,400 | 639,614 | 605,436 | 7,237,668 |
| **NET INCOME TOTAL** | $ 7,097.95 | $ 24,453.70 | $ 58,253.36 | $ 95,220.95 | $ 38,851.58 | $ 20,184.25 | $ 67,284.58 | $ 77,890.12 | $ 133,570.12 | $ 180,575.35 | $ 199,711.45 | $ 97,014.29 | $ 1,000,107.25 |

# ACCENT WINDOWS, INC. CHAPTER 11 PROFORMA
## 7 MONTH CASHFLOW DETAIL 2014

| | January | February | March | April | May | June | July | TOTALS |
|---|---:|---:|---:|---:|---:|---:|---:|---:|
| **REVENUE** | | | | | | | | |
| LICENSEE SALES | 200,000 | 225,000 | 250,000 | 225,000 | 175,000 | 200,000 | 225,000 | 1,500,000 |
| WHOLESALE SALES | 25,000 | 30,000 | 35,000 | 35,000 | 30,000 | 35,000 | 40,000 | 230,000 |
| COMMERCIAL SALES | 25,000 | 25,000 | 25,000 | 25,000 | 30,000 | 30,000 | 35,000 | 195,000 |
| RETAIL SALES | 600,000 | 625,000 | 650,000 | 700,000 | 625,000 | 650,000 | 650,000 | 4,500,000 |
| TOTAL REVENUE | 850,000 | 905,000 | 960,000 | 985,000 | 860,000 | 915,000 | 950,000 | 6,425,000 |
| **EXPENSES (Manufacturing)** | | | | | | | | |
| MANUFACTURING COSTS | 229,500 | 244,350 | 259,200 | 265,950 | 232,200 | 247,050 | 256,500 | 1,734,750 |
| CONTRACT LABOR WINDOWS | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 14,000 |
| TOTAL EXPENSES/MANUFACTURING | 231,500 | 246,350 | 261,200 | 267,950 | 234,200 | 249,050 | 258,500 | 1,748,750 |
| GROSS MARGIN | 618,500 | 658,650 | 698,800 | 717,050 | 625,800 | 665,950 | 691,500 | 4,676,250 |
| **WAGES & PAYROLL EXPENSE** | | | | | | | | |
| Installation | 62,500 | 65,000 | 67,500 | 72,500 | 65,500 | 68,000 | 68,500 | 469,500 |
| Service | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 63,000 |
| Sales | 52,000 | 54,000 | 56,800 | 60,800 | 54,800 | 57,000 | 58,000 | 394,000 |
| Marketing | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 9,000 | 63,000 |
| Accounting | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 70,000 |
| General Administration | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 7,000 | 49,000 |
| Manufacturing | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 70,000 | 490,000 |
| R&D/Facilities/Misc | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 16,500 | 115,500 |
| Shipping/Receiving/Warehouse | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 56,000 |
| Production | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 52,500 |
| Officer Wages | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 37,000 | 259,000 |
| HEALTH INSURANCE | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 30,000 | 210,000 |
| PAYROLL TAXES | 22,070 | 22,445 | 22,820 | 23,508 | 22,514 | 22,889 | 22,988 | 159,235 |
| TOTAL WAGE EXPENSE | 340,570 | 345,845 | 351,120 | 360,808 | 346,814 | 352,089 | 353,488 | 2,450,735 |
| **SELLING/ADMIN. EXPENSES** | | | | | | | | |
| ADVERTISING/TV & RADIO | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 25,000 | 175,000 |
| ADV/PUBLISHED/YELLOW PAGES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 7,000 |
| ADV/PROMO MISC. | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 7,000 |
| HOMESHOW FEES & MISC.EXP | 6,500 | 1,000 | 1,000 | 1,000 | 2,000 | 2,000 | 3,000 | 16,500 |
| ACCOUNTANTS/ATTORNEYS | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 35,000 |
| AUTO/TRAVEL MFG | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 5,500 | 38,500 |
| AUTO/VANS/VANS | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 7,000 |
| CHARITABLE DONATIONS | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 1,400 |
| DUES/SUBSCRIPTIONS | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 8,400 |
| EMPLOYEE/EDUCATION/SAFETY | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 1,750 |
| ENTERTAINMENT/MFG | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 2,100 |
| ENTERTAINMENT RETAIL | 400 | 400 | 400 | 400 | 400 | 400 | 400 | 2,800 |
| EQUIPMENT RENTAL | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 7,000 |
| FEES/PERMITS/LICENSES/MISC TAX | 12,750 | 13,575 | 14,400 | 14,775 | 12,900 | 13,725 | 14,250 | 96,375 |
| FINANCE & VISA FEES | 6,250 | 6,250 | 6,250 | 7,000 | 6,250 | 6,500 | 6,500 | 45,000 |
| FREIGHT IN PURCHASE | 4,250 | 4,525 | 4,800 | 4,925 | 4,300 | 4,575 | 4,750 | 32,125 |
| INSURANCE BUSINESS | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 140,000 |
| OFFICE SUPPLIES/COMPUTER/GARYCO | 5,960 | 6,335 | 6,720 | 6,895 | 6,020 | 6,405 | 6,650 | 44,975 |
| RENT PECOS | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 26,000 | 182,000 |
| RENT/SHOWROOMS (NEW MEXICO) | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 21,000 |
| RENT/SHOWROOMS (HIGHLANDS RANCH) | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 52,500 |
| NEW MEXICO EXPENSE | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 8,000 | 56,000 |
| REPAIRS/SHOP/TOOLS/TRASH | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 24,500 |
| UTILITIES | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 21,000 |
| TELEPHONE | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 2,700 | 18,900 |
| TOTAL SELLING/ADMIN. EXPENSES | 152,000 | 147,235 | 148,970 | 150,145 | 147,020 | 148,755 | 149,700 | 1,043,825 |
| **OTHER EXPENSES** | | | | | | | | |
| CAPITAL EXPENDITURE PAYMENT | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 70,000 |
| CLASS 3 CREDITOR PAYMENT @ % OF GROSS REVENUE | 63,750 | 67,875 | 72,000 | 73,875 | | | | 277,500 |
| INTEREST TO CLASS 5 @ ANNUAL 3.25% | | | 1,996 | | | | | 1,996 |
| TOTAL OTHER EXPENSES | 73,750 | 77,875 | 83,996 | 83,875 | 10,000 | 10,000 | 10,000 | 349,496 |
| TOTAL MONTHLY EXPENSES | 566,320 | 570,955 | 584,086 | 594,828 | 503,834 | 510,844 | 513,188 | 3,844,056 |
| NET INCOME TOTAL | $ 52,179.75 | $ 87,694.90 | $ 114,713.94 | $ 122,221.55 | $ 121,966.05 | $ 155,106.20 | $ 178,311.75 | $ 832,194.14 |

## ACCENT WINDOWS, INC. CHAPTER 11 PROFORMA
## CONSOLIDATED PROFORMA

| | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | Totals |
|---|---|---|---|---|---|---|---|
| **REVENUE** | | | | | | | |
| LICENSEE SALES | $400,000 | $1,020,000 | $1,575,000 | $1,975,000 | $2,600,000 | $1,500,000 | $9,070,000 |
| WHOLESALE SALES | $90,000 | $175,000 | $227,500 | $227,500 | $227,500 | $230,000 | $1,177,500 |
| COMMERCIAL SALES | $100,000 | $245,000 | $340,000 | $340,000 | $340,000 | $195,000 | $1,560,000 |
| RETAIL SALES | $2,100,000 | $5,295,000 | $7,370,000 | $7,905,000 | $8,150,000 | $4,500,000 | $35,320,000 |
| **TOTAL REVENUE** | **$2,690,000** | **$6,735,000** | **$9,512,500** | **$10,447,500** | **$11,317,500** | **$6,425,000** | **$47,127,500** |
| | | | | | | | |
| **EXPENSES (Manufacturing)** | | | | | | | |
| MANUFACTURING COSTS | $726,300 | $1,818,450 | $2,568,375 | $2,820,825 | $3,055,725 | $1,734,750 | $12,724,425 |
| CONTRACT LABOR WINDOWS | $10,000 | $24,000 | $24,000 | $24,000 | $24,000 | $14,000 | $120,000 |
| **TOTAL EXPENSES/MANUFACTURING** | **$736,300** | **$1,842,450** | **$2,592,375** | **$2,844,825** | **$3,079,725** | **$1,748,750** | **$12,844,425** |
| **GROSS MARGIN** | **$1,953,700** | **$4,892,550** | **$6,920,125** | **$7,602,675** | **$8,237,775** | **$4,676,250** | **$34,283,075** |
| | | | | | | | |
| **WAGES & PAYROLL EXPENSE** | | | | | | | |
| Installation | $220,000 | $554,000 | $771,000 | $824,500 | $849,000 | $469,500 | $3,688,000 |
| Service | $37,500 | $108,000 | $108,000 | $108,000 | $108,000 | $63,000 | $532,500 |
| Sales | $183,200 | $457,200 | $635,000 | $677,800 | $697,400 | $394,000 | $3,044,600 |
| Marketing | $45,000 | $108,000 | $108,000 | $108,000 | $108,000 | $63,000 | $540,000 |
| Accounting | $30,000 | $72,000 | $96,000 | $108,000 | $120,000 | $70,000 | $496,000 |
| General Administration | $25,000 | $60,000 | $72,000 | $78,000 | $84,000 | $49,000 | $368,000 |
| Manufacturing | $150,000 | $360,000 | $720,000 | $840,000 | $840,000 | $490,000 | $3,400,000 |
| R&D/Facilities/Mtnc | $50,000 | $144,000 | $180,000 | $180,000 | $198,000 | $115,500 | $867,500 |
| Shipping/Receiving/Warehouse | $28,000 | $78,000 | $90,000 | $90,000 | $96,000 | $56,000 | $438,000 |
| Production | $18,000 | $72,000 | $84,000 | $84,000 | $90,000 | $52,500 | $400,500 |
| Officer Wages | $185,000 | $444,000 | $444,000 | $444,000 | $444,000 | $259,000 | $2,220,000 |
| HEALTH INSURANCE | $25,000 | $120,000 | $240,000 | $360,000 | $360,000 | $210,000 | $1,315,000 |
| PAYROLL TAXES | $74,335 | $187,976 | $253,062 | $270,986 | $278,032 | $159,235 | $1,223,625 |
| **TOTAL WAGE EXPENSE** | **$1,071,035** | **$2,765,176** | **$3,801,062** | **$4,173,286** | **$4,272,432** | **$2,450,735** | **$18,533,725** |

| | 2009 | 2010 | 2011 | 2012 | 2013 | 2014 | Totals |
|---|---|---|---|---|---|---|---|
| **SELLING/ADMIN. EXPENSES** | | | | | | | |
| ADVERTISING/TV & RADIO | $60,000 | $168,000 | $192,000 | $216,000 | $300,000 | $175,000 | $1,111,000 |
| ADV/PUBLISHED/YELLOW PAGES | $5,000 | $12,000 | $12,000 | $12,000 | $12,000 | $7,000 | $60,000 |
| ADV/PROMO MISC. | $5,000 | $12,000 | $12,000 | $12,000 | $12,000 | $7,000 | $60,000 |
| HOMESHOW FEES & MISC.EXP. | $5,500 | $15,300 | $15,300 | $14,500 | $14,500 | $9,500 | $74,600 |
| ACCOUNTANTS/ATTORNEYS | $25,000 | $60,000 | $60,000 | $60,000 | $60,000 | $35,000 | $300,000 |
| AUTO/TRAVEL MFG | $10,000 | $42,000 | $48,000 | $54,000 | $66,000 | $38,500 | $258,500 |
| AUTO/INST/VANS | $5,000 | $12,000 | $12,000 | $12,000 | $12,000 | $7,000 | $60,000 |
| CHARITABLE DONATIONS | $1,000 | $2,400 | $2,400 | $2,400 | $2,400 | $1,400 | $12,000 |
| DUES/SUBSCRIPTIONS | $6,000 | $14,400 | $14,400 | $14,400 | $14,400 | $8,400 | $72,000 |
| EMPLOYEE/EDUCATION/SAFETY | $1,250 | $3,000 | $3,000 | $3,000 | $3,000 | $1,750 | $15,000 |
| ENTERTAINMENT/MFG | $1,500 | $3,600 | $3,600 | $3,600 | $3,600 | $2,100 | $18,000 |
| ENTERTAINMENT RETAIL | $2,000 | $4,800 | $4,800 | $4,800 | $4,800 | $2,800 | $24,000 |
| EQUIPMENT RENTAL | $5,000 | $12,000 | $12,000 | $12,000 | $12,000 | $7,000 | $60,000 |
| FEES/PERMITS/LICENSES/MISC TAX | $40,350 | $101,025 | $142,688 | $156,713 | $169,763 | $96,375 | $706,913 |
| FINANCE & VISA FEES | $21,000 | $52,950 | $73,700 | $79,050 | $81,500 | $45,000 | $353,200 |
| FREIGHT IN PURCHASE | $13,450 | $33,675 | $47,563 | $52,238 | $56,588 | $32,125 | $235,638 |
| INSURANCE BUSINESS | $50,000 | $120,000 | $144,000 | $144,000 | $240,000 | $140,000 | $838,000 |
| OFFICE SUPPLIES/COMPUTER/GARYCO | $18,830 | $47,145 | $66,588 | $73,133 | $79,223 | $44,975 | $329,893 |
| RENT PECOS | $125,000 | $276,000 | $294,000 | $300,000 | $312,000 | $182,000 | $1,489,000 |
| RENT/SHOWROOMS (NEW MEXICO) | $12,500 | $30,000 | $33,000 | $34,800 | $36,000 | $21,000 | $167,300 |
| RENT/SHOWROOMS (HIGHLANDS RANCH) | $21,000 | $78,000 | $84,000 | $86,400 | $90,000 | $52,500 | $411,900 |
| NEW MEXICO EXPENSE | $10,000 | $30,000 | $30,000 | $36,000 | $36,000 | $21,000 | $163,000 |
| REPAIR/SHOP/TOOLS/TRASH | $17,500 | $42,000 | $42,000 | $42,000 | $42,000 | $24,500 | $210,000 |
| UTILITIES | $37,500 | $102,000 | $108,000 | $108,000 | $108,000 | $63,000 | $526,500 |
| TELEPHONE | $13,500 | $32,400 | $32,400 | $32,400 | $32,400 | $18,900 | $162,000 |
| **TOTAL SELLING/ADMIN. EXPENSES** | **$512,880** | **$1,306,695** | **$1,489,438** | **$1,565,433** | **$1,800,173** | **$1,043,825** | **$7,718,443** |
| | | | | | | | |
| **OTHER EXPENSES** | | | | | | | |
| CAPITAL EXPENDITURE PAYMENT | 0 | $60,000 | $60,000 | $120,000 | $120,000 | $70,000 | $430,000 |
| IRS PAYMENT | $47,500 | $138,000 | $144,000 | $150,000 | $161,630 | $0 | $641,130 |
| URBAN MACHINERY PAYMENT | $4,973 | $5,969 | $0 | $0 | $0 | $0 | $10,942 |
| CLASS 3 CREDITOR PAYMENT @ % OF GROSS REVENUE | $71,338 | $186,000 | $573,988 | $736,875 | $856,613 | $277,500 | $2,702,313 |
| CHAPTER 11 QUARTERLY FEES | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| INTEREST TO CLASS 3 @ ANNUAL 3.25% | $35,949 | $82,419 | $73,207 | $51,859 | $26,821 | $1,996 | $272,252 |
| **TOTAL OTHER EXPENSES** | **$159,759** | **$472,388** | **$851,195** | **$1,058,734** | **$1,165,064** | **$349,496** | **$4,056,636** |
| | | | | | | | |
| **TOTAL MONTHLY EXPENSES** | **$1,743,674** | **$4,544,259** | **$6,141,694** | **$6,797,453** | **$7,237,668** | **$3,844,056** | **$30,308,804** |
| | | | | | | | |
| **NET INCOME TOTAL** | **$210,026** | **$348,291** | **$778,431** | **$805,222** | **$1,000,107** | **$832,194** | **$3,974,271** |
| Profit Margin | 7.81% | 5.17% | 8.18% | 7.71% | 8.84% | 12.95% | 8.43% |

07/14/09
11:43 AM

Accent Windows Inc.
Balance Sheet
For June 09 (Period 6)
06/01/09 Through 06/30/09

Page   1

ASSETS

| | |
|---|---:|
| 101-00 CHASE BANK - OPERATING ACCOUNT | (5,137.43) |
| 102-00 SAVINGS ACCOUNT | 53.55 |
| 103-00 CHASE BANK - PAYROLL ACCOUNT | (9,340.53) |
| 104-00 PETTY CASH | 477.18 |
| 110-00 ACCOUNTS RECEIVABLE | 121,011.88 |
| 110-99 LUMP SUM CONTRACT COST OF GOODS | .00 |
| 111-00 ALLOWANCE FOR DOUBTFUL ACCTS | (244,295.00) |
| 112-00 N/R ACCENT WEST.COLO./GJ 042505 | .00 |
| 113-00 N/R TERRY MARCOVICH - 2007 | .00 |
| 114-00 N/R TERRY MARCOVICH - 2008 | 4,280.08 |
| 115-00 N/R ANDY KLEIN - 2008 | 11,900.91 |
| 115-01 N/R ANDY KLEIN - 2009 | 5,369.68 |
| 115-50 EMPLOYEE LOANS/ADVANCES | (1,352.44) |
| 120-00 INVENTORY | .00 |
| 120-01 INVENTORY VINYL WINDOWS | 484,372.20 |
| 120-06 INVENTORY DOORS | .00 |
| 120-10 INVENTORY LSC | .00 |
| 120-40 INVENTORY/SHIRTS | 2,112.72 |
| 120-90 WORK IN PROCESS | .00 |
| 120-99 CPA INVENTORY/OH END OF YR | 59,000.00 |
| 122-00 PREPAID INSURANCE/2005 WC DEPOSIT | .00 |
| 123-00 PREPAID EXP CS BLDG     DO NOT USE | .00 |
| 125-00 IMS TRADE ACCOUNT | 6,415.91 |
| 126-00 IN-HOUSE TRADE ACCOUNT | 3,820.17 |
| 130-00 CASH TRANSFER | (1,979.98) |
| 155-00 OFFICE FURNITURE AND EQUIPMENT | 250,072.08 |
| 157-00 TRANSPORTATION EQUIPMENT | 3,383.12 |
| 159-00 MACHINERY AND EQUIPMENT | 1,222,666.39 |
| 161-01 LEASEHOLD IMPROVEMENT/12300 PECOS | 138,647.06 |
| 161-02 LEASEHOLD IMPROVEMENTS/WADSWORTH | 27,278.89 |
| 161-03 LEASEHOLD IMPROVEMENTS/QUEBEC | 32,484.40 |
| 161-04 LEASEHOLD IMPROVEMENTS/COLO SPRINGS | 10,548.00 |
| 161-05 LEASEHOLD IMPROVE/COUNTY LINE | 59,777.57 |
| 168-00 ACCUMULATED DEPRECIATION | (1,295,455.68) |
| 181-00 DEPOSIT - PUEBLO UTILITIES | .00 |
| 182-00 DEPOSIT - PENSKE TRUCK LEASING | 12,000.00 |
| 183-00 DEPOSIT - CHRISTMAS PARTY DEPOSIT | .00 |
| 184-00 DEPOSIT - EQUIPMENT | .00 |
| 185-00 DEPOSIT/COLO SPRNGS SHOWROOM 2005 | .00 |
| 186-00 DEPOSIT/DELAGE LANDEN/COPIERS | .00 |
| 187-00 DEPOSIT/12300 PECOS ST | .00 |
| 189-00 DEPOSIT/COLO SPGS UTILITIES | 443.60 |
| 190-00 DEPOSIT/ENOVAT/DATA BASE/LICENSEES | .00 |
| 190-06 DEPOSIT/COUNTY LINE | 5,250.00 |
| 190-07 DEPOSIT/9910 WADSWORTH PARKWAY | .00 |
| 191-00 DEPOSIT-WTS SOFTWARE | .00 |
| 192-00 ACCRUED VENDOR REBATES | .00 |
| 192-01 ACCRUED RENT | .00 |
| 193-00 PREPAID ANNUAL AGREEMENTS/ADMIN | .00 |
| 193-01 PREPAID ADVERTISING | .00 |

**Exhibit C**

Accent Windows Inc.
Balance Sheet
For June 09 (Period 6)
06/01/09 Through 06/30/09

ASSETS
```
    193-02 DEPOSIT/CALLCOMMANDDIRECT LST MO                  .00
    195-00 DEPOSIT/HOMESHOWS                           16,775.00
    196-00 DEPOSIT/GOLF TOURNAMENT                           .00
    196-01 DEPOSIT - COMPANY PICNIC/ADAMS CNTY              .00
    197-00 PREPAID INSURANCE                            2,299.48
    198-00 RETAINER/RUMLER,TARBOX & LYDEN               5,000.00
    199-00 RETAINER - BKD                              10,000.00
                                                 ----------------
                                                      937,878.81
                                                 ----------------
Total Assets                                          937,878.81

LIABILITIES
    202-00 ACCOUNTS PAYABLE                          2,076,615.99
    202-90 PURCHASE IN PROCESS                              .00
    203-00 AMERICAN EXPRESS PAY    DO NOT USE               .00
    203-10 US BANK PAYABL          DO NOT USE               .00
    203-20 CAPITAL ONE PAYABLE     DO NOT USE               .00
    204-00 LIFE ANNUITY / MET LIFE                       999.03
    205-00 Loan Deduct/JACK MC QUAIN                         .00
    205-50 SHAREHOLDERS ADVANCES                       (1,568.05)
    206-00 SHAREHOLDER ADVANCE/RICHARD ROEDING        (97,501.30)
    207-00 GARNISHMENT/CHILD SUPPORT PAYABLE             (50.00)
    208-00 PETTY CASH LOANS                            (280.00)
    209-00 PURCHASE PRODUCT/EMPLOYEE                     115.81
    210-00 401 K EMPLOYEE                             6,059.84
    212-00 EIC ACCRUAL                                     .00
    213-00 ACCRUED SALARIES                          68,906.19
    214-00 FICA EMPLOYER                             145,041.29
    215-00 FICA EMPLOYEE ACCRUAL                      145,041.29
    216-00 MEDICARE EMPLOYER                          34,911.79
    217-00 MEDICARE EMPLOYEE ACCRUAL                   34,911.79
    218-00 FUTA ACCRUAL                                 797.94
    219-00 SUTA ACCRUAL                               24,614.63
    220-00 WORK COMP ACCRUAL                          58,520.29
    221-00 ACCRUED VACATION LIABILITY                 136,400.00
    222-00 401 K EMPLOYER ACCRUAL                     (27,612.04)
    223-00 ACCRUED FEES                                    .00
    223-01 ACCRUED ADVERTISING                             .00
    223-02 ACCRUED N/P INTEREST                            .00
    224-00 FEDERAL WITHHOLDING                        317,894.42
    226-00 STATE WITHHOLDING                           1,500.00
    226-04 IFTA TAX - 2007                                 .00
    226-05 NP/SALES TAX                                2,122.56
    226-10 COG/LSC TAX ACCRUAL                         6,924.65
    226-50 SALES TAX----OP/INVOICE ACCRUAL              161.91
    231-00 STATE INCOME TAX PAYABLE                        .00
    232-00 FEDERAL INCOME TAX PAYABLE                      .00
    234-00 PROFIT SHARING PAYABLE                          .00
    236-00 DEFERRED TAXES                                  .00
```

Balance Sheet
For June 09 (Period 6)
06/01/09 Through 06/30/09

LIABILITIES
    237-00 DEFERRED INCOME/CAPITAL EQUIPMENT                    .00
    240-00 PROPERTY TAX/PRIOR YR. ASSESSMENT                    .00
    245-00 BUSINESS INSURANCE PRIOR YEAR AUDIT                  .00
    246-01 N/P OFFICER/R ROEDING 2005                      1,457.56
    246-02 N/P OFFICER/T MARCOVICH 09/03 24MO                   .00
    246-03 N/P OFFICER/ROEDING                            66,500.00
    246-04 TIM OR SHERRY MARCOVICH/SS CONTRIB                   .00
    246-05 N/P T&S MARCOVICH 3/30/07                            .00
    247-00 N/P JACK MCQUAIN                                7,711.97
    248-00 N/P TIM & SHERRY MARCOVICH 2007               943,986.80
    249-00 N/P TIM & SHERRY MARCOVICH 2008               324,933.33
    249-05 N/P TIM & SHERRY MARCOVICH/RE AIG             271,710.00
    250-00 N/P MEIER                                     264,075.29
    250-01 NORM MEIER 2ND N/P                             71,317.47
    251-00 N/P NOEL                                             .00
    252-00 N/P URBAN MACHINERY                            11,556.97
    253-00 N/P MAUDRU                                    100,000.00
    254-00 N/P NICK STUDEN 12MO 12/04-11/05                     .00
    255-00 N/P OFFICE DEPOT 12/05-03/06                         .00
    280-00 DEFERRED RENT LIABILITY                       266,336.29
    281-00 DEFERRED WARRANTY LIABILITY                    47,898.84
    282-00 DEFERRED COMPENSATION                         109,053.17
                                                     ---------------
                                                       5,421,065.72


SHAREHOLDERS EQUITY
    320-00 COMMON STOCK                                  136,895.00
    325-00 DIVIDENDS                                           .00
    326-00 SHAREHOLDER DISTRIBUTIONS                           .00
    328-00 AIG OBLIGATION TO TIM & S MARCOVICH          (271,710.00)
    330-00 RETAINED EARNINGS/S CORP                    (3,965,447.32)
    335-00 CURRENT YEAR PROFIT/LOSS                            .00
                                                     ---------------
                                                      (4,100,262.32)
                                                     ---------------
Current Period Retained Earnings                        (382,922.63)
                                                     ---------------
Total Liabilities & Equity                              937,880.77

## EXHIBIT D
## Liquidation Analysis

### ASSETS[1]

| | |
|---|---:|
| Cash | $ 72,117 |
| Accounts Receivable | $ 41,802 |
| Inventory | $125,400 |
| Furniture and Equipment | $ 25,007 |
| Transportation Equipment | $  2,200 |
| Machinery and Equipment | $366,799 |
| **Total:** | $633,325 |

| | |
|---|---:|
| **Estimated Total Assets** | **$633,325** |

### LIABILITIES

#### SECURED CREDITORS

| | |
|---|---:|
| Urban Machinery | $11,557 |
| Net Proceeds after payment of secured debt | $621,768 |

#### UNSECURED PRIORITY CLAIMS

| | |
|---|---:|
| IRS[2] | $641,126 |
| Net Proceeds after payment of unsecured Priority claims | ($19,358) |

#### EXPENSES

Chapter 11 - administrative expenses[3]

| | |
|---|---:|
| KMK legal fees (estimated) | $52,000 |
| Rumler Tarbox legal fees (estimated) | $46,000 |
| James Jablonski legal fees (estimated) | $13,000 |
| Ducker Montgomery legal fees (estimated) | $20,000 |
| BKD Accounting Fees (estimated) | $24,000 |
| U.S. Trustee (estimated) | $4,875 |
| Total Chapter 11 administrative expenses | $159,875 |
| Net proceeds after Chapter 11 expenses | ($179,233) |

---

1  All values as of February 2009.
2  This amount is based upon IRS amended proof of claim
3  All legal fees are estimates after application of any retainers provided by the Debtor.

Chapter 7 - Expenses

| | |
|---|---|
| Trustee fee[4] | $34,915 |
| Accountant's fees (estimated) | $10,000 |
| Attorneys' fees (estimated) | $ 5,000 |
| Total Chapter 7 expenses | $49,915 |

Net proceeds after Chapter 7 expenses          ($229,148)

**Total Liquidation Value**                    **$0.00**

Unsecured debt[5]:                             $3,799,969
Distribution to unsecured creditors:                  0%

**Distribution to Unsecured Creditors**        **$0.00**

---

4 This is based upon 11 U.S.C. §326(a)
5 This includes an unsecured claim held by Tim and Sherry Marcovich in the amount of $1,129,480.62. If there is a confirmed Chapter 11 Plan, they will not participate in any distribution to unsecured creditors.